OPINION
Defendant-appellant Robert L. Dinunzio ("Dinunzio") appeals from his plea of No Contest to the charges of (1) Speeding [49 mph in a 35 mph zone; R.C. 4511.21 (B)(3)] and (2) Driving with a Prohibited Concentration of Breath Alcohol [.174% BAC; R.C.4511.19 (A) (3)]. The plea was made subsequent to the trial court denying Dinunzio's motion to suppress evidence following an evidentiary hearing. For the reasons adduced below, we affirm.
A review of the record on appeal indicates that at approximately 2:00 a.m. on December 24, 1997, Richmond Heights Police Patrolman Darren Porter was operating a stationary radar post on Richmond Road (aka Ohio State Route 175) at Gate B of the Cuyahoga County Airport in the City of Richmond Heights, Ohio. Richmond Road at that point is a two-lane roadway. At that time, Officer Porter's radar equipment recorded a vehicle operated by Dinunzio traveling southbound on Richmond Road at 49 mph "right around" the intersection of Allendale Road. Tr. 7-8. Allendale Road is across the street from the airport, approximately one thousand feet north of the spot where Officer Porter was parked, and there are several homes adjacent to that intersection. Tr. 17-19. There was no other traffic on the road. Tr. 22. The weather conditions were not adverse. Tr. 22. The area was marked at "numerous spots" as a 35 mph zone, but Officer Porter could not identify exactly where these notices were posted. Tr. 10-11. In response to questioning by the trial court, Officer Porter also testified that Richmond Road has a 35 mph speed limit throughout its length within the City of Richmond Heights. Tr. 23.
Based upon this radar information, Officer Porter pulled out into traffic in pursuit of the offender with overhead emergency lights flashing and siren operating. Officer Porter stopped Dinunzio's vehicle after a short distance. Speaking with Dinunzio at the scene of the stop, Officer Porter smelled alcohol on Dinunzio's breath. Tr. 11. Dinunzio failed field sobriety tests administered at the scene of the stop by another policeman. Tr. 12-13. Officer Porter considered the speed of Dinunzio's vehicle to be unreasonable for the circumstances because the road surface was "not the smoothest road." Tr. 22.
City of Richmond Heights Patrol Sergeant James Nagy testified after Officer Porter at the suppression hearing. Sergeant Nagy testified, over a defense objection, that he was told by Richmond Heights Police Lieutenant Steffen that Richmond Road is designated as an urban arterial by the Ohio Department of Transportation with a designed speed limit of 40 mph and a legal speed limit of 35 mph. Tr. 25-26, 30. Sergeant Nagy also testified to the degree of development, business and residential, along Richmond Road. Tr. 27-29. Sergeant Nagy also testified that Richmond Road is posted as having a speed limit of 35 mph throughout the City of Richmond Heights, but he could not identify specific locations for the speed limit signage. Tr. 29. In fact, he was not positive that speed limit signs were posted on Richmond Road between Allendale Road and Gate B of the county airport. Tr. 33. Finally, on cross-examination by the defense, Sergeant Nagy agreed with counsel's statement relative to an "urban district" classification for the area that, between Allendale Road and Gate B of the county airport on Richmond Road, there are not structures on both sides of the road within 100 feet of each other for more than a quarter mile. Tr. 32-33.
Five assignments of error are presented for review. To provide a more coherent analysis, these assignments will be addressed in an order other than that presented by appellant.
The second assignment of error provides:
 II THE TRIAL COURT ERRED BY ADMITTING HEARSAY TESTIMONY INTO EVIDENCE CONTRARY TO OHIO RULE OF EVIDENCE 802.
In this assignment, appellant argues that the trial court erred in admitting the testimony of Sergeant Nagy relative to what he was told by Lieutenant Steffen. It was Lieutenant Steffen who allegedly contacted the Ohio Department of Transportation and the City's engineer and learned that Richmond Road: (1) is designated as an urban arterial; (2) is designed for a speed limit of 40 mph; (3) has a speed limit of 35 mph. See Tr. 25, 30. This speed limit and roadway designation information was then allegedly relayed by Lieutenant Steffen to Sergeant Nagy, who then used it in his (Nagy's) suppression hearing testimony.
In State v. Woodring (1989), 63 Ohio App.3d 79, the court recognized that a trial court is afforded broad discretion concerning the admission of evidence presented in a suppression hearing and that hearsay evidence is not per se inadmissible at such a preliminary determination stage which is a criminal suppression of evidence hearing. The Woodring court based its determination upon an application of Evid.R. 101 (C) (1) and 104 (A). Evid.R. 101 (C) (1) provides that the Rules of Evidence are not binding on admissibility determinations made pursuant to Evid.R. 104 (A). Evid.R. 104 (A) provides:
 (A) Questions of Admissibility generally. Preliminary questions concerning * * * the admissibility of evidence shall be determined by the court subject to the provisions of subdivision (B). In making its determination it is not bound by the rules of evidence except those with respect to privilege. (Italicization added.)
 Woodring's determination, that hearsay evidence may be used at suppression hearings, was subsequently cited with approval by this appellate court. See City of Cleveland v. Prihoda (March 24, 1994), Cuyahoga App. No. 65778, unreported, 1994 Ohio App. LEXIS 1205, at 7, fn. 1; In the Matter of Leon Coleman (Dec. 30, 1993), Cuyahoga App. No. 65459, unreported, 1993 Ohio App. LEXIS 6311, at 11.
The second assignment of error is overruled.
The third assignment of error provides:
 III THE TRIAL COURT ERRED IN ADMITTING AN UNAUTHENTICATED DOCUMENT INTO EVIDENCE.
In this assignment, appellant argues that the trial court erred in admitting a piece of unidentified documentary evidence which was provided by the prosecution. The relevant portion of the hearing transcript dealing with this piece of evidence states the following:
 MS. BETTASSO [the prosecutor]: Your Honor, if I may?
 THE COURT: It's a state route through an urban area. I think that's —
 MS. BETTASSO: (Inaudible). This is all the information that we have.
 MR. LOGRASSO [defense counsel]: That's just something typed on a piece of paper, your Honor. There's nothing designating it from the State of Ohio, from the Department of Transportation —
THE COURT: I think the statutes —
MR. LOGRASSO: — from the city engineer.
 THE COURT: The statutes state it as a 35-miles-per-hour zone on a state route through an urban area throughout a municipality.
 MR. LOGRASSO: I have that in my brief, your Honor.
 THE COURT: Okay. Go ahead. (Tr. 31-32.) [Explanation added.]
Nowhere in the record is this piece of evidence identified. However, appellant includes an exhibit to his brief (this same exhibit is included in the record provided by the trial court) which states:
 MOTION TO SUPPRESS Pursuant to filing by defense counsel, following information obtained:
 Ohio Dept. of Transportation has designated SR175 Richmond Road as Urban Arterial with design speed of 40 mph. and Legal speed of 35mph. Gary Bammerlin of ODOT and Ron Bender of Euthenic's Traffic Co. are source. Lee Courtney, City Engineer, concurs with urban district designation of Richmond Rd. for entire length within Municipality as definition of urban district is met at multiple locales, Richmond Rd. north of Chardon. Richmond Rd. from Merit Dr. to Swetland Ct. Richmond Rd. from Highland Rd. south to Mall. (1/4 mile with separation under 100 feet for residence/business) Additionally, for entire length of SR 175 — Richmond Rd. from Lakeshore Blvd. In Euclid to Cannon Rd. in Solon, speed is set at 35mph.
Assuming that this passage reflects the contested evidence, it has been determined via Woodring that the Rules of Evidence do not apply to suppression hearings. See discussion in assignment of error number II, supra. Accordingly, the trial court utilized its broad discretionary powers in admitting this piece of evidence to determine the preliminary question before the trial court.
The third assignment of error is overruled.
The first and fourth assignments of error will be discussed jointly since they both argue the manifest weight of the evidence with regard to the court's conclusion that the legal speed limit along Richmond Road is 35 mph and, therefore, Officer Porter has probable cause to stop Dinunzio's speeding vehicle.
The first assignment of error provides:
 I THE TRIAL COURT ERRED IN DENYING MR. DINUNZIO'S MOTION TO SUPPRESS PHYSICAL EVIDENCE WHEN THE EVIDENCE SEIZED WAS THE FRUIT OF AN ILLEGAL SEARCH AND SEIZURE IN VIOLATION OF ARTICLE I, SECTION 14 OF THE OHIO CONSTITUTION AND THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.
The fourth assignment of error provides:
 IV THE TRIAL COURT ERRED BY RULING AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
In the first assignment, Dinunzio argues that Officer Porter lacked probable cause to stop his vehicle traveling 49 mph because the area of the infraction (around the intersection of Richmond and Allendale Roads) was not an "urban district" as defined by R.C. 4511.01(PP) and, accordingly, pursuant to R.C.4511.21 (d) (6) the "prima facie speed limitation on such part of such highway is fifty miles per hour." Appellant's brief at 7. Further, appellant argues that the City did not demonstrate that they complied with the requirements of R.C. 4511.21 to reduce the prima facie speed limit of 50 mph to 35 mph. Id.
The fourth assignment argues that the determination by the trial court that the area of the stop is an urban district and has a speed limit of 35 mph, rather than the prima facie speed limit of 50 mph for an urban district, was against the manifest weight of the evidence. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment. State v. Thompkins (1997),78 Ohio St.3d 380, 387, 678 N.E.2d 541 citing State v. Martin
(1983), 120 Ohio App.3d 172, 175, 485 N.E.2d 717. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230,227 N.E.2d 212, syllabus 1.
The standard of review for an investigatory traffic stop was recently stated in City of Brecksville v. O'Toole (Aug. 13, 1998), Cuyahoga App. No. 72909, unreported, 1998 WL 474186, at 4-5:
 The standard of review with respect to whether the officer had adequate grounds to conduct an investigatory stop of the defendant's vehicle without a warrant was stated in City of Brecksville v. Bayless
(April 3, 1997), Cuyahoga App. No. 70973, unreported, at 5-6, citing State v. Velez (May 4, 1995), Cuyahoga App. No. 67595, unreported, at 3-5:
 The scope of our review on a motion to suppress was recently set forth by this Court in State v. Curry (1994), 95 Ohio App.3d 93, 96, 641 N.E.2d 1172:
 "In a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate witness credibility. State v. Clay (1973), 34 Ohio St.2d 250, 63 O.O.2d 391, 298 N.E.2d 137. A reviewing court is bound to accept those findings of fact if supported by competent, credible evidence. See State v. Schiebel (1990), 55 Ohio St.3d 71, 564 N.E.2d 54. However, without deference to the trial court's conclusion, it must be determined independently whether, as a matter of law, the facts meet the appropriate legal standard. State v. Claytor (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906, 908."
 In Terry v. Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, the United States Supreme Court held that a police officer may stop and investigate unusual behavior, even without probable cause to act, when he reasonably concludes that the individual is engaged in criminal activity. In justifying that conclusion, the officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." Id. at 21.
 The circumstances are to be viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold. State v. Freeman
(1980), 64 Ohio St.2d 291, 295, 414 N.E.2d 1044.
 As the Supreme Court stated in State v. Williams (1990), 51 Ohio St.3d 58, 60-61, 554 N.E.2d 108:
 The standard for reviewing such police conduct is an objective one: "would the facts available to the officer at the moment of the seizure or the search "warrant a man of reasonable caution in the belief' that the action taken was appropriate?" Terry, supra at 21-22; United States v. Wright
(C.A.8, 1977), 565 F.2d 486, 489. That is, "an investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity.' United States v. Cortez (1981), 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621.
 City of Brecksville v. Bayless, supra at 6, also stated:
 The United States Supreme Court confirmed these principles in Whren v. United States (1996), 517 U.S. 806, 116 S.Ct. 1769 at 1772, 135 L.Ed.2d 89, where it stated: "As a general matter, the decision to stop an automobile is reasonable where police have probable cause to believe that a traffic violation has occurred."
 The Supreme Court of Ohio has also recently held that stops based on minor traffic violations do not violate the Fourth Amendment. In Dayton v. Erickson (1996), 76 Ohio St.3d 3, 665 N.E.2d 1091. the syllabus held:
 Where a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution even if the officer has some ulterior motive for making the stop, such as a suspicion that the violator was engaging in more nefarious criminal activity.
In the case sub judice, there was competent and credible evidence upon which the trial court could conclude that Richmond Road was an urban district at the scene of the investigatory stop, that the legal speed limit on that roadway was posted at 35 mph, that Dinunzio's vehicle was traveling at fourteen miles over the posted legal speed limit, and that this speeding activity provided probable cause to Officer Porter that Dinunzio's speeding was in violation of the traffic code. Accordingly, the trial court did not abuse its discretion in denying the motion to suppress.
The first and fourth assignments of error are overruled.
The fifth, and final, assignment of error provides:
 V THE TRIAL COURT ERRED IN REFUSING TO MAKE FINDINGS OF FACT IN VIOLATION OF CRIMINAL RULE 12 (E) AFTER DEFENSE COUNSEL REQUESTED THEY BE MADE ON THE RECORD.
Crim.R. 12 (E), upon which defendant-appellant relies, states:
 (E) Ruling on motion. The court may adjudicate a motion based upon briefs, affidavits, the proffer of testimony and exhibits, a hearing, or other appropriate means.
 A motion made pursuant to divisions (B) (1) to (B) (5) of this rule shall be determined before trial. Any other motion made pursuant to division (B) of this rule shall be determined before trial whenever possible. Where the court defers ruling on any motion made by the prosecuting attorney before trial and makes a ruling adverse to the prosecuting attorney after the commencement of trial, and the ruling is appealed pursuant to law with the certification required by division (J) of this rule, the court shall stay the proceedings without discharging the jury or dismissing the charges.
 Where factual issues are involved in determining a motion, the court shall state its essential findings on the record.
In State v. Waddy (1992), 63 Ohio St.3d 424, 443, the Ohio Supreme Court determined that, where the trial court record is sufficient to allow full review of the suppression issues, the trial court is not required to issue findings of fact and conclusions of law pursuant to Crim.R. 12 (E) on the denial of a motion to suppress evidence. See, State v. Brewer (1990), 48 Ohio St.3d 60.
Although not specifically identified by the, trial court as findings of fact and conclusions of law, the trial court record in this case includes in the motion to suppress judgment entry what could be interpreted as findings and conclusions relevant to determine the issues raised by the motion to suppress. These "findings and conclusions" provide:
 COMING ON THE ORAL HEARING ON AUGUST 4, 1998 ON THE DEFENDANT'S MOTION TO SUPPRESS AND BRIEF IN SUPPORT FILED PRIOR TO THE HEARING AND CONSIDERATION OF THE SAME, DEFENDANT'S MOTION TO SUPPRESS IS DENIED.
 IN ATTENDANCE WAS THE PROSECUTOR FOR THE CITY OF RICHMOND HEIGHTS AND THE DEFENDANT AND HIS COUNSEL MR. LOGRASSO. THE ARRESTING OFFICER, DARREN PORTER, WAS A WITNESS. HE TESTIFIED THAT HE HAD BEEN A MEMBER OF THE RICHMOND HEIGHTS POLICE DEPARTMENT FOR 18 MONTHS AND HAD GRADUATED FROM THE OHIO HIGHWAY ACADEMY ON APRIL 11, 1997 AND HAS HAD FURTHER ON THE JOB TRAINING AND COURSE TRAINING ON SPEED MEASUREMENT DEVICES AND IN CALIBRATING STATIONARY RADAR.
 DEFENDANT WAS PROCEEDING SOUTH BOUND ON STATE ROUTE 175 (RICHMOND ROAD) IN FRONT OF CUYAHOGA COUNTY AIRPORT. OFFICER PORTER WAS PARKED FACING SOUTH BOUND AND WAS OPERATING RADAR WHEN HE CLOCKED DEFENDANT TRAVELING 49 MILES PER HOUR IN A 35 MILES PER HOUR SPEED ZONE. THE COURT FINDS THAT THE RADAR UNIT INVOLVED WAS PROPERLY CALIBRATED AND TESTED BY THE OFFICER PRIOR TO THE CLOCK. DURING THE TRAFFIC STOP, OFFICER PORTER TESTIFIED THAT HE SMELLED A STRONG ORDER (SIC) OF ALCOHOL COMING FROM THE DEFENDANT' S BREATH AND THAT DEFENDANT'S SPEECH WAS SLURRED.
 RICHMOND HEIGHTS POLICE THEN ADMINISTERED FILED SOBRIETY TESTS WHICH THE DEFENDANT FAILED. DEFENDANT WAS THEN TRANSPORTED TO RICHMOND HEIGHTS POLICE STATION AND WAS ADMINISTERED A BAC TEST WHICH RESULTED IN AN .174 WHICH IS IN EXCESS OF THE LEGAL LIMIT OF .10.
 STATE OF OHIO V. DOWNEY (1987) 37 OHIO APP.3D 45 IS AN ANALOGOUS CASE WHICH VERY MUCH PARRALLELS (SIC) THE INSTANT MATTER BEFORE THE COURT. THE COURT HELD THAT:
 "WHEN A POLICE OFFICER HAS EVIDENCE THAT A DEFENDANT IS SPEEDING, AND UPON STOPPING THE DEFENDANT'S VEHICLE NOTES A STRONG ODOR OF ALCOHOLIC BEVERAGE UPON THE DEFENDANT'S PERSON, THE OFFICER MAY THEN CONDUCT FURTHER INVESTIGATION TO DETERMINE IF THERE IS PROBABLE CAUSE TO ARREST THE DEFENDANT FOR OPERATING A MOTOR VEHICLE UNDER THE INFLUENCE OF ALCOHOL."
 THE COURT HOLDS THAT THE ARRESTING OFFICER HAD REASONABLE GROUNDS TO MAKE A TRAFFIC STOP ON THE DEFENDANT AT THE TIME AND PLACE OF THE STOP. STATE ROUTE 175 (RICHMOND ROAD) IS A 35 MILE PER HOUR SPEED ZONE AND THE DEFENDANT WAS TRAVELING 49 MILES AN HOUR. OHIO REVISED CODE 4511.21B(3) PROVIDES THAT THIRTY-FIVE MILES PER HOUR IS THE LEGAL SPEED LIMIT ON ALL STATE ROUTE OR THROUGH HIGHWAYS WITHIN MUNICIPAL CORPORATIONS OUTSIDE BUSINESS DISTRICTS, EXCEPT AS PROVIDED IN DIVISION B(4) AND (6) OF THIS SECTION. THE EVIDENCE SHOWED THAT THE AREA IN QUESTION OF STATE ROUTE 175 (RICHMOND HEIGHTS) IS LOCATED AND RUNS THROUGH AN URBAN AREA, WHOLLY WITHIN THE CITY OF RICHMOND HEIGHTS AND THEREFORE IS CONTROLLED BY THE 35 MILE PER HOUR SPEED ZONE.
 BASED ON THE FOREGOING, THE COURT FINDS THAT THE OFFICER AT THE TIME HAD A REASONABLE SUSPICION THAT THE DEFENDANT WAS EXCEEDING THE POSTED SPEED LIMIT OF 35 MILES PER HOUR. FROM THE TOTALITY OF ALL THE EVIDENCE, THE COURT FINDS THAT THE OFFICER HAD PROBABLE CAUSE TO ARREST AND PROCESS THE DEFENDANT FOR DUI. THEREFORE, DEFENDANT'S MOTION TO SUPPRESS IS DENIED. CASE TO BE SET FOR TRIAL.
These "findings and conclusions," and the record below in the event that these "findings and conclusions" are not considered to be formal findings and conclusions, permit a complete review of the suppression issues. Accordingly, pursuant to Waddy, the trial court did not abuse its discretion in not filing "formal" findings of fact and conclusions of law.
The fifth assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Lyndhurst Municipal Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
DIANE KARPINSKI, P.J., and PATRICIA A. BLACKMON, J., CONCUR.
 ________________________ JAMES D. SWEENEY JUDGE