JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Eric Cammon ("appellant"), appeals the judgment of the Cuyahoga County Court of Common Pleas denying his motion to suppress evidence which resulted in his conviction for possession of drugs, drug trafficking and possessing criminal tools. For the following reasons, we affirm the judgment of the trial court.
 {¶ 2} On November 14, 2001, appellant was indicted by the Cuyahoga County Grand Jury in a five-count indictment. On February 5, 2002, appellant filed his motion to suppress, and after hearing the evidence, the trial court overruled the motion on March 8, 2002. Appellant then withdrew his previously entered plea of not guilty and entered a plea of no contest. The trial court found appellant guilty as charged in the indictment of possession of drugs,[1] a fifth-degree felony; trafficking in drugs,[2] a fifth-degree felony; trafficking in drugs, a second-degree felony; possession of drugs, a second-degree felony; and possession of criminal tools,[3] a fifth-degree felony. On April 23, 2002, the trial court sentenced appellant to six months imprisonment on each of the counts one, two and five, and two years imprisonment on each of the counts three and four, with all counts to run concurrent.
 {¶ 3} The transcript demonstrates that during the hearing on appellant's motion to suppress, the State presented the testimony of Cleveland Police Detectives Vinson and Speights. Vinson testified that on October 15, 2001, he, Sergeant Travis and Detective Speights were on duty, driving in an unmarked police vehicle in the area of East 105th Street and St. Clair Avenue at approximately 2:00 a.m. The officers stopped to observe activities on the corner of 105th and Everton. Vinson testified that he witnessed appellant run around the corner and into a backyard where he dug around and picked up something by a back porch. Appellant then concealed it in his pocket and went back around the corner heading south. Speights testified that he observed appellant pick up what appeared to be a large bag of narcotics. During this activity, Vinson stated that appellant appeared to be nervous and was looking up, down and around himself.
 {¶ 4} The officers followed appellant, where they observed him meet with three to four males in a parking lot of a closed restaurant. Vinson recognized one of the men as, one from whom he had recently purchased heroin in a controlled purchase. Vinson and Speights observed appellant with his hand extended while the other men looked into his hand. Speights testified that he observed the men pass something from hand to hand.
 {¶ 5} Based on this, the officers approached and detained the men. Vinson and Speights testified that appellant placed the object that was in his hand into his jacket pocket. Speights then proceeded to pat the appellant down and heard a plastic crunching sound. Speights asked appellant whether he had anything in his pockets that might harm him or any narcotics. Speights testified that appellant stated he had drugs and then indicated his front jacket pocket where Speights found a plastic bag with eight individual bags of heroin. Speights then advised appellant of his rights and placed him under arrest. Subsequently, the officers recovered $490 cash and approximately 80 rocks of crack cocaine from appellant's pants.
 {¶ 6} The trial court also heard Appellant's testimony with respect to that evening. Appellant's testimony regarding the events differs from the testimony of the detectives. Appellant claims that he was riding his bike through a field when he heard a car horn. Believing that the horn was for him, he turned around, but because he did not recognize the vehicle, he rode his bike to a friend's house where he waited near a porch and let the vehicle pass him. Afraid that he would be robbed, the appellant stated that he recognized a group of men in a parking lot and rode to them. Appellant then engaged the men in a conversation when the same vehicle, containing the detectives, stopped them. Appellant denied that he was in a backyard retrieving drugs and stated that he was cutting through the field to go home. Appellant testified that he informed Speights that he did not have any drugs, but that Speights reached in his pocket anyway.
 {¶ 7} Appellant submits the following single assignment of error:
 {¶ 8} "The trial court erred in denying Appellant's motion to suppress evidence illegally obtained in violation of the Fourth Amendment of the United States Constitution and Section 4, Article I of the Ohio Constitution."
 {¶ 9} This court set forth the standard of review of a trial court's judgment with regard to a motion to suppress in State v.Curry (1994), 95 Ohio App.3d 93, 96, which states:
 {¶ 10} "In a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate witness credibility. State v. Clay (1973), 34 Ohio St.2d 250, 63 Ohio Op.2d 391, 298 N.E.2d 137. A reviewing court is bound to accept those findings of fact if supported by competent, credible evidence. See State v. Schiebel (1990), 55 Ohio St.3d 71, 564 N.E.2d 54. However, without deference to the trial court's conclusion, it must be determined independently whether, as a matter of law, the facts meet the appropriate legal standard. State v. Claytor (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906."
 {¶ 11} The Fourth Amendment to the United States Constitution provides:
 {¶ 12} "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but on probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."
 {¶ 13} Next, we must determine the appropriate legal standard. We are guided by State v. Andrews (1991), 57 Ohio St.3d 86, which reasoned:
 {¶ 14} "In Terry [v. Ohio (1968), 392 U.S. 1], the United States Supreme Court held that a police officer may stop and investigate unusual behavior, even without probable cause to arrest, when he reasonably concludes that the individual is engaged in criminal activity. In assessing that conclusion, the officer `must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.' Id. at 21. Furthermore, the standard against which the facts are judged must be an objective one: `[W]ould the facts available to the officer at the moment of the seizure or the search `warrant a man of reasonable caution in the belief' that the action taken was appropriate?' Id. at 21-22." Andrews at 87.
 {¶ 15} The Court in Andrews found that this requires "an objective and particularized suspicion that criminal activity was afoot must be based on the entire picture — a totality of the surrounding circumstances. Furthermore, these circumstances are to be viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold. A court reviewing the officer's actions must give due weight to his experience and training and view the evidence as it would be understood by those in law enforcement." Andrews
at 87-88. (Citations omitted.)
 {¶ 16} In his assignment of error, appellant argues that the State failed to establish that the police had sufficient reasonable suspicion to justify the warrantless search and seizure or that he was armed or dangerous justifying the pat down search. Appellant also contends that the State failed to establish that the criminal nature of the object in his jacket was immediately apparent to the police officer conducting the frisk.
 {¶ 17} Thus, we must determine whether, under the circumstances the police officers had a reasonable suspicion necessary to stop appellant and investigate the situation. Our review of the transcript reveals that Vinson and Speights are experienced police officers with each having approximately 14 years on the police department. For the last ten years, Vinson worked in the vice unit and street crimes unit focusing on drug investigation. During this time, Vinson made over a thousand arrests related to drugs. Speights worked in the street crimes unit almost five years and made hundreds of drug arrests. Both detectives testified that they had seen people act in similar ways and that, based on their experience, they believed appellant picked up drugs and that a drug transaction was taking place between the men. Notably, appellant was observed with his hand outstretched to the other men, two of whom were known to the officers as a drug dealer and a drug user. Further, the events took place at night, in the early morning hours near 2:00 a.m., in a high crime area that the officers were very familiar with and that they investigated nightly. Speights performed a pat down on appellant and after feeling and hearing a plastic crunching sound, he inquired whether appellant had anything in his possession that would harm the officer or narcotics. Speights testified that appellant informed him that he had drugs.
 {¶ 18} After viewing the totality of the circumstances, we find that the officers held a reasonable suspicion that appellant was engaged in drug activity necessary in order to stop and investigate the situation. The detectives testified as to specific and articulable facts upon which they based their reasonable suspicion. Further, we are guided to view these facts through the eyes of the reasonable and prudent police officer on the scene. Based on their observations and past experience, the detectives made the decision to stop and investigate appellant.
 {¶ 19} Even where the stop is justified, the court must then determine whether a protective weapons search is justified. "[T]here must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or `hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." Terry, supra, at 27. (Citations omitted.)
 {¶ 20} With respect to the search of appellant, Speights testified that he placed appellant against the vehicle for officer safety and performed a pat down search to determine if he had any weapons or contraband.
 {¶ 21} The transcript reveals that Speights testified as follows:
 {¶ 22} "Basically placed him against the car. Did a safety pat down which is our standard frisk. And at that time I discovered narcotics in his left pocket." Speights also stated, "[w]hat we did is, anytime we make an arrest or we check someone, we exit our vehicles and identify ourselves as police officers. At that time the male was placed against the car for officer safety and we were able to pat him down and check out to see if he has any weapons or contraband on him."
 {¶ 23} The Terry Court held, "[w]here a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him." Terry at 30.
 {¶ 24} In State v. Bobo (1988), 37 Ohio St.3d 177, paragraph two of the syllabus, the Court held,"[w]here a police officer, during an investigative stop, has a reasonable suspicion that an individual is armed based on the totality of the circumstances, the officer may initiate a protective search for the safety of himself and others." See also Andrews, supra. The facts presented herein support the trial court's ruling denying appellant's motion to suppress. With a reasonable suspicion that appellant was involved in drug activity, the detectives approached appellant within a group of men, in the dark, at approximately 2:00 a.m., in a vacant parking lot. Based on the totality of the circumstances, the detectives were permitted to make a protective pat down search for the safety of themselves and others.
 {¶ 25} Further, in State v. Evans (1993), 67 Ohio St.3d 405, 413, the Court stated:
 {¶ 26} "The right to frisk is virtually automatic when individuals are suspected of committing a crime, like drug trafficking, for which they are likely to be armed. See State v. Williams (1990), 51 Ohio St.3d 58, 554 N.E.2d 108. See, also, United States v. Ceballos
(E.D.N.Y. 1989), 719 F. Supp. 119, 126: "The nature of narcotics trafficking today reasonably warrants the conclusion that a suspected dealer may be armed and dangerous."
 {¶ 27} Next, we address appellant's argument that the evidence of the heroin should have been suppressed because the frisk exceeded the limits of "plain touch" when the illegal nature of the contraband was not readily apparent to the detective during the frisk. We are not persuaded by this argument. In State v. Cloud (1993), 91 Ohio App.3d 366, 370, this court stated:
 {¶ 28} "Police may seize non-threatening contraband detected through the sense of touch during a protective pat down search of the sort permitted in Terry, so long as the search stays within the bounds marked by Terry. Minnesota v. Dickerson (1993), 508 U.S. 366. 113 S.Ct. 2130, 124 L.Ed.2d 334. The identity of the contraband, however, must be immediately apparent to the searching officer. Id. Here, Speights testified that during the safety pat down, he felt a crunching plastic sound in appellant's jacket pocket which he believed to be narcotics.
 {¶ 29} In addition, appellant informed the officer that he was in possession of drugs in response to Speights' question of whether appellant had anything in his possession that might hurt him or drugs. This question did not trigger the requirement of Miranda warnings. State v.Gaston (1996), 110 Ohio App.3d 835, 843. Although appellant was detained for a brief investigatory stop, this did not rise to the level of a custodial arrest. Accordingly, appellant's single assignment of error is overruled.
Judgment is affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANNE L. KILBANE, P.J. AND JAMES J. SWEENEY, J., CONCUR.
N.B. This entry is an announcement of the court's decision. See App.R.22(B), 22(D) and 26(A); Loc.App.R.22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also S.Ct.Prac.R. II, Section 2(A)(1).
[1] R.C. 2925.11.
[2] R.C. 2925.03.
[3] R.C. 2923.24.