THE STATE OF OHIO, APPELLANT, *v.* WILLIAMS, APPELLEE.

[Cite as State *v.* Williams (1990), 51 Ohio St. 3d 58.]

(No. 89-229—Submitted February 21, 1990—Decided May 9, 1990.)

*John E. Meyers,* prosecuting attorney, and *Ronald J. Mayle,* for appellant.

*Robert G. Hart,* for appellee.

*Per Curiam.* We are asked to determine whether the stop and frisk of appellee by Deputy Garst violated appellee's right, as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution, to be free from unreasonable searches and seizures. We answer such query in the negative, as Deputy Garst's conduct was lawful under the dictates of *Terry* v. *Ohio* (1968), 392 U.S. 1, and its progeny.

*Terry* stands for the proposition that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." *Id.* at 22. "The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response. See *id.,* at 23. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time. *Id.,* at 21-22; see *Gaines* v. *Craven,* 448 F. 2d 1236 (CA9 1971); *United States* v. *Unverzagt,* 424 F. 2d 396 (CA8 1970).

"The Court recognized in *Terry* that the policeman making a reasonable investigatory stop should not be denied the opportunity to protect himself from attack by a hostile suspect. 'When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others,' he may conduct a limited protective search for concealed weapons. 392 U.S., at 24." *Adams* v. *Williams* (1972), 407 U.S. 143, 145-146.

In order to warrant a brief investigatory stop pursuant to *Terry,* the police officer involved "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry, supra,* at 21. Such an investigatory stop "must be viewed in light of the totality of the surrounding circumstances" presented to the police officer. *State* v. *Freeman* (1980), 64 Ohio St. 2d 291, 18 O.O. 3d 472, 414 N.E. 2d 1044, paragraph one of the syllabus. The standard for reviewing such police conduct is an objective one: "would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that

the action taken was appropriate?" *Terry, supra,* at 21-22; *United States* v. *Wright* (C.A.8, 1977), 565 F. 2d 486, 489. That is, "[a]n investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." *United States* v. *Cortez* (1981), 449 U.S. 411, 417.

We observe initially that no apparent "seizure" of Williams occurred, and thus the Fourth Amendment was not implicated, until Deputy Garst asked Williams to accompany him to Garst's car.[2] Garst's approach to Williams, and his initial question ("I asked him what he was doing there"), cannot be said to have restrained Williams's liberty in such a way that he was not free to leave.

Even if this initial encounter were characterized as a "seizure" for Fourth Amendment purposes, our review of the entire record leads us to the conclusion that Deputy Garst acted reasonably in investigating Williams's presence at the abandoned farmhouse. In checking out the complaint from earlier in the day, Deputy Garst had not found a picked-over country garden, but rather had discovered several growing fields of marijuana, as well as a path leading from the woods into such fields and on down to the abandoned farm buildings. A possible, and reasonable, inference led Garst to suspect that the men which the complainant had observed carrying "produce" were actually carrying marijuana plants from the woods. Upon returning to the farm buildings, Garst happened upon Williams, whom he did not know and of whom he reasonably inquired as to his reason for being there.

Williams's answer, that he was at this farmhouse to ask the owner's permission to hunt on his land, further aroused Garst's suspicion. The farmhouse was obviously abandoned, and there remained only minutes in the day during which Williams could legally squirrel hunt. This combination of facts, together with rational inferences drawn from them, reasonably justified Garst in detaining Williams further to determine his identity and to question him. See *United States* v. *Purry* (C.A.D.C. 1976), 545 F. 2d 217, 220. We hold that Deputy Garst possessed a reasonable suspicion that Williams was engaged in or was about to engage in criminal activity.

"The second aspect of *Terry* was its approval of frisks by the police of the persons they have stopped. Such frisks, which are limited searches of the person, also do not require probable cause but only a reasonable suspicion that the person stopped is armed.

---

[2] As stated in *Terry, supra,* at 19, fn. 16:

"* * * [N]ot all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred."

"There is nothing in the Constitution which prevents a policeman from addressing questions to anyone on the streets." *Id.* at 34 (White, J., concurring).

In *United States* v. *Mendenhall* (1980), 446 U.S. 544, 554, the court explained: "[t]hat a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." See, *e.g., State* v. *Smith* (1989), 45 Ohio St. 3d 255, 257-260, 544 N.E. 2d 239, 241-244, reversed on other grounds, *sub nom. Smith* v. *Ohio* (1990), 494 U.S. ___, 108 L. Ed. 2d 464, 110 S. Ct. 1288.

\* \* \* The rationale behind allowing frisks was to permit the officer to take reasonable precautions for his own safety consistent with the detainee's fourth amendment interests." *United States* v. *Smith* (C.A.6, 1978), 574 F. 2d 882, 885.

In *Terry, supra,* at 24, the court held that "[w]hen an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others" he may conduct a protective search for concealed weapons. Any such search for weapons must be "limited in scope to this protective purpose." *Adams, supra,* 407 U.S. at 146. See *People* v. *Lee* (1971), 48 Ill. 2d 272, 269 N.E. 2d 488.

Analyzing Deputy Garst's conduct here against the objective standard required by *Terry,* and based on the totality of the circumstances, we hold that he acted properly in conducting a protective search of Williams. Garst was alone; he had just discovered a large quantity of growing marijuana and had reason to believe that three men were actively harvesting it; he then suddenly encountered Williams, whose stated reasons for being where he was were less than plausible; and he knew that individuals involved in trafficking in marijuana were likely to be armed and dangerous. Although not necessary to justify his conduct under an objective standard, *United States* v. *Tharpe* (C.A.5, 1976), 536 F. 2d 1098, 1100, Garst specifically stated that he frisked appellee for his own personal safety. Deputy Garst was entitled, under *Terry,* to conduct for his own protection a limited search of Williams.

We also hold that the scope of this search was properly limited. Garst patted down the outer clothing of Williams. He first discovered and removed a folding knife, followed by discovery of what he thought were small caliber shells in Williams's coat pocket. He then reached into Williams's pocket to confirm this suspicion, and immediately inquired as to the location of the gun. The scope of this search did not exceed the boundary of its initial justification, *i.e.,* the protection of Deputy Garst.

In *People* v. *Lee, supra,* police officers properly stopped and frisked six men believed to be armed and dangerous. During the pat down of the defendant it seems the officer felt a gun holster and what appeared to be a shell. The officer then reached inside the defendant's outer coat and seized the empty shoulder holster and an unspent shotgun shell. The Illinois Supreme Court upheld the scope of this search, stating:

"\* \* \* Officer Brennan reached within Brown's outer coat only after the holster and shell had been detected from the pat-down. The objects were hard and of appreciable size and their presence apparent from touching the outer clothing. The shell could be reasonably identified by the officer in his pat search as some object capable of being used as a weapon. The shape of the holster and the location permitted its ready identification. Anyone, and especially a police officer, would be alerted to the probable presence of the dangerous weapon suggested by the finding of the holster. Under these circumstances, we judge that the officer's conduct in reaching within Brown's outer clothing to secure the objects was consistent with the Supreme Court's holding in *Terry.*" *Id.* at 278, 269 N.E. 2d at 492.

The court further held that the shotgun shell, although not itself a weapon, was nevertheless admissible in evidence. "Under the fourth amendment it has long been held that contraband not searched for but discovered

during a valid search may be seized and is admissible in evidence. (See *Abel* v. *United States,* 362 U.S. 217 * * *.) We perceive nothing in *Terry* to suggest that this should not be held in the case of a 'stop and frisk.' " *Id.* at 279, 269 N.E. 2d at 492. See, also, *Worthy* v. *United States* (C.A.D.C. 1968), 409 F. 2d 1105, 1109. "If, while conducting a legitimate Terry search * * *, the officer should, as here, discover contraband other than weapons, he clearly cannot be required to ignore the contraband, and the Fourth Amendment does not require its suppression in such circumstances." *Michigan* v. *Long* (1983), 463 U.S. 1032, 1050, citing *Coolidge* v. *New Hampshire* (1971), 403 U.S. 443, 465; *Michigan* v. *Tyler* (1978), 436 U.S. 499, 509; *Texas* v. *Brown* (1983), 460 U.S. 739.

Moreover, Deputy Garst's inquiry as to the location of the gun was also proper. The gun could have been anywhere, and the scope of a *Terry*-type search extends to the area within the immediate control of the detainee. *Michigan* v. *Long, supra,* at 1049-1050, fn. 14. " '* * * [S]uspects may injure police officers and others by virtue of their access to weapons, even though they may not themselves be armed." *Id.* at 1048.

Williams's admission to having a loaded gun in his truck constituted probable cause for a violation of R.C. 2923.16(C), and justified further detention of Williams for purposes of identification and further investigation. Based on the totality of the circumstances surrounding the "stop and frisk" of Williams by Deputy Garst here, we hold that such conduct was lawful under the Fourth Amendment. Accordingly, we reverse the court of appeals' decision and reinstate the trial court's judgment of conviction.

*Judgment reversed.*

MOYER, C.J., HOLMES, DOUGLAS, WRIGHT, H. BROWN and BRYANT, JJ., concur.

SWEENEY, J., dissents.

THOMAS F. BRYANT, J., of the Third Appellate District, sitting for RESNICK, J.

SWEENEY, J., dissenting. In my view, the facts elucidated below did not warrant a pat-down frisk of defendant under *Terry* v. *Ohio* (1968), 392 U.S. 1, 44 O.O. 2d 383. As pointed out by the court of appeals below, the record discloses that Deputy Garst had no objective, reasonable basis for frisking defendant. The defendant made no furtive gestures and did not act aggressively or attempt to flee. Moreover, it appears that defendant cooperated completely with all requests made by Garst, even though he was not fully aware at the time that Garst was a law enforcement officer. Under these circumstances, the frisk was not justifiable under *Terry, supra.*

In addition, I am dismayed by the majority's continued expansion of the ill-advised decision rendered in *State* v. *Bobo* (1988), 37 Ohio St. 3d 177, 524 N.E. 2d 489. While the majority does not specifically rely on *Bobo,* the rule of law announced in *State* v. *Freeman* (1980), 64 Ohio St. 2d 291, 18 O.O. 3d 472, 414 N.E. 2d 1044, on which the majority does rely, was greatly expanded in *Bobo,* as well as in the cause *sub judice.* Unfortunately, decisions such as that made herein and in *Bobo* transform the guarantees of the Fourth Amendment into a mere form of words. The majority of this court is already on notice that its particular view of the scope and breadth of the Fourth Amendment does not square with the law as articulated by the United States Supreme Court as

evidenced by its summary reversal of this court in *Smith* v. *Ohio* (1990), 494 U.S. ____, 108 L. Ed. 2d 464, 110 S. Ct. 1288. I would hope that such a pronouncement by the high court would compel this court to be more circumspect in reviewing Fourth Amendment cases. However, today's decision indicates that such has yet to occur.

In any event, based on the foregoing, I would affirm the decision of the appellate court below.