OPINION
{¶ 1} Defendant-appellant Charles Harris, III appeals from his conviction and sentence for Possession of Crack Cocaine, in an amount less than one gram, following a no-contest plea. Harris contends that the trial court erred by denying his motion to suppress evidence, which he contends was obtained as the result of an unlawful search and seizure. We conclude that the evidence in the record supports the trial court's finding that no unlawful search and seizure occurred. Accordingly, the judgment of the trial court is Affirmed.
 I {¶ 2} The relevant facts are set forth in the trial court's decision, as follows:
 {¶ 3} "On September 4, 2001 between 8:00 and 9:00 a.m., several officers of the Dayton Police Department went to the Plaza Hotel located on Stanley Avenue in Dayton, Ohio. The officers were responding to an anonymous call received by the dispatchers that a short, black male by the name of Charles Harris was in a room with a white woman by the name of Tina and that someone was on their way to purchase a kilogram of cocaine from them. One of the officers got the key to room 124 from the hotel office. Officers Lowe, Oney, and Townsend approached the entrance to the room. Lowe knocked on the door and a white female, later identified as Tina Marker, looked out of the window located next to the door. Lowe asked her to open the door. She opened the door, left it wide open, and proceeded into the back of the hotel room. It is unclear whether she gave oral consent to enter.
 {¶ 4} "Lowe entered the room first, followed by the other officers, and focused on a black male, later determined to be Mr. Harris, lying in the bed with the blankets pulled up to his neck. Lowe noticed movement of Mr. Harris's hands near his crotch area. He asked to see his hands, and when Mr. Harris did not comply, he removed the blankets and had Mr. Harris get out of the bed. Lowe patted Mr. Harris down and discovered a wad of money in the left pocket of his shorts and a baggy of small hard objects that he believed to be crack-cocaine in his other pocket. After testing a rock, which gave a positive result for crack-cocaine, other officers read Mr. Harris his Miranda rights."
 {¶ 5} Harris was arrested and charged with Possession of Crack Cocaine. He moved to suppress the evidence, contending that it was obtained as the result of an unlawful search and seizure. Following a hearing, the trial court denied his motion to suppress. Thereafter, Harris pled no contest, was found guilty, and was sentenced accordingly. From his conviction and sentence, Harris appeals.
 II {¶ 6} Harris's sole assignment of error is as follows:
 {¶ 7} "The trial court errored [sic] in that it did not sustain defendants [sic] motion to suppress an illegal and unlawful search and an illegal and unlawful search based on an anonymous tip."
 {¶ 8} Both Harris and Gaines moved to suppress evidence obtained against them. The trial court ruled against Harris, but in favor of Gaines. In that part of its decision pertaining to Harris, the trial court ruled as follows:
 {¶ 9} "Defendants move the Court to suppress all evidence obtained as a result [of] the police's warrantless entry into the hotel room on September 4, 2001. Defendants claim that they were arrested, searched, and seized in violation of their Fourth Amendment rights. The State, however, responds that a warrant was not necessary because Ms. Marker opened the hotel room door upon request by the officers, thereby consenting to allow police inside the hotel room. Defendants, however, argue that when police knocked on the door of the hotel room, a stop-and-frisk occurred. Further, they argue that the stop cannot be justified because it was not based upon a reasonable suspicion. Rather, police were responding to an anonymous tip that drug activity was afoot. As the United States Supreme Court has recognized, `an anonymous tip, without more, does not justify an officer's stop and frisk of a person.'State v. Riley (2001), 141 Ohio App.3d 409, 411 (citing Florida v. J.L.
(2000), 529 U.S. 266). However, when Ms. Marker opened the door after police knocked, a consensual encounter occurred, independent of the anonymous tip. Such an encounter does not require that police have a reasonable suspicion that the room's occupants were engaged in criminal activities.
 {¶ 10} "In order to determine whether constitutional guarantees against unreasonable searches and seizures are implicated when police have contact with an individual, the Second District Court of Appeals of Ohio has recognized the three categories of police-citizen contact created by the United States Supreme Court. State v. Taylor (1995),106 Ohio App.3d 741. The three categories created by the Supreme Court to determine if the constitutional guarantees against unreasonable searches and seizures are implicated are consensual encounters, investigatory detentions or Terry stops; and seizures which are equivalent to arrests.Id. at 747-749.
 {¶ 11} "An encounter is consensual when `the police merely approach a person in a public place, engage the person in conversation, request information, and the person is free not to answer and walk away.'Id. at 747. The constitutional guarantees against unreasonable searches and seizures are not implicated in such a consensual encounter. However, if the officer `by either physical force or show of authority restrain[s] the person's liberty so that a reasonable person would not feel free to decline the officer's requests or otherwise terminate the encounter,' then the constitutional guarantees are implicated. Id. at 748. `Once a person's liberty has been restrained, the encounter loses its consensual nature and falls into one of the next two Supreme Court Categories.' Id.
 {¶ 12} "The facts in this situation reveal that a consensual encounter occurred when Ms. Marker opened the door for the officers. Although the officers were not in a public place, courts have recognized that `a mere knocking does not implicate the Fourth Amendment.' UnitedStates v. Winsor (9th Cir. 1988), 846 F.2d 1569, 1573. However, circumstances can arise that would cause knocking on a door to escalate into an investigatory detention. See United States v. Jerez (7th Cir. 1997), 108 F.3d 684. In Jerez, the Court stated that `the totality of the circumstances surrounding [the] encounter — the late hour of the episode, the three minutes knocking on the door, the commands and requests to open the door, the one-and-a-half to two minutes of knocking on the outside window, and the shining of the flashlight through the small opening in the window drapes — makes clear that a seizure took place.' Id. at 692. Once an encounter escalates into an investigatory detention, an officer may detain the individual for brief questioning only when the officer has a reasonable suspicion that the individual is engaged in criminal activity. Terry v. Ohio (1968), 392 U.S. 1.
 {¶ 13} "The facts in this case do not rise to the level of those in Jerez. Rather, the facts indicate that the encounter, which took place during morning hours, was consensual. Lowe testified that he only knocked on the door one time. He stepped to the right of the door to ask Ms. Marker, who appeared in the window, if they could come in. There is no testimony to suggest that they demanded that she open the door or that they continued to knock for any length of time. Upon hearing someone knock upon the door one time, a reasonable person would believe that he or she could decline to open the door. Thus the encounter was consensual because there was no showing that police used force, coerced or otherwise intimidated Ms. Marker into opening the door. Therefore, police were not required to have a reasonable suspicion to knock on the door.
 {¶ 14} "An issue arises as to whether Ms. Marker had the authority to consent to the police's entry into the hotel room. A third party may consent if he or she possesses common authority over the premises. Such consent need not be explicit, and may be implied. See United States v.Turbyfill (8th Cir. 1975), 525 F.2d 57, 59 (`opening of the door and stepping back constituted an implied invitation to enter'). Thus in this case, it appears that there was at least implied consent when Ms. Marker opened the door and walked away.
 {¶ 15} "Defendants argue that the officers should have first gone to the management office to ascertain who the registered guests were. In support of this argument, Defendants refer the court to Illinois v.Rodriguez (1990), 110 S.Ct. 2793, 2801, wherein the United States Supreme Court held that the determination of consent to enter is objective; the issue is whether the facts available to the officer at that time would warrant a reasonable belief that the third party had authority over the premises. The burden of showing that a third party has authority is on the state, and requires a showing of `mutual use of the property by persons generally having joint access or control for most purposes.' Id. at 2797 (quoting United States v. Matlock (1974), 415 U.S. 164, 171, n. 7. Defendants' argument rests on the premise that the officers could have gone to the rental office to determine who the registered guests of the room were, and therefore their belief that Ms. Marker had authority to consent was unreasonable.
 {¶ 16} "Although there is testimony to reveal that one officer went to the hotel office to obtain a key, the officers that testified were unaware of any effort to determine to whom the room was rented. However, Defendants' argument would require the adoption of a rule that only a registered guest has the authority to consent to entry into a hotel room. However, Defendants have not provided any precedent for such a rule, nor does it appear that it would be supported by case law. As stated by the Supreme Court, authority rests not upon a property interest that the third party might have in the property, but upon mutual use of the property. Matlock, 415 U.S. at 171, n. 7. While courts generally hold that a hotel clerk cannot provide consent to enter the hotel room of a suspect, occupants other than the registered guests can permit entry if it is reasonable for [an] officer to believe that the guest has the authority to do so.
 {¶ 17} "For example, in a factually similar case involving an anonymous tip about three Hispanic males trafficking drugs in a hotel room, police actually went to the manager to discover that a man by the name of Sosa was registered to the room. State v. Sosa (Sept. 30, 1999), Lucas App. No. L-98-1355, unreported. Police knocked on the door and obtained consent to enter from a man who they later learned was not Sosa. Id. The Court held that it was reasonable to believe the man who answered the door had authority to grant consent. Id. This was despite the fact that they knew the name of the registered guest, that there could be two other males staying in the room, and that they could have questioned the man who answered the door to determine whether he was Sosa, the person that rented the room. Id. See also State v. Ashworth
(April 11, 1991), Franklin App. No. 90AP-916, unreported (stating that `[a]lthough the officers' knowledge that the room was registered in defendant's name may have given them notice that the scope of [another's] authority was limited, that fact alone does not render unreasonable the officers' belief that [the other] could validly consent to their entry).'
 {¶ 18} "Accordingly, whether or not the officers in this case knew who the registered guests were for the room in question, police could reasonably believe that Ms. Marker, who looked out the window then answered the door, had common authority over the room. Thus, police obtained valid consent to negate the necessity of obtaining a warrant prior to entering the hotel room.
 {¶ 19} "Once inside, Lowe testified that he immediately focused on Mr. Harris, who was in bed with blankets pulled up to his neck. Upon seeing movement under the blankets, Lowe asked him to put his hands up. When he did not comply, Lowe removed the blanket and ordered him out of bed. At this point, it was clear that Harris was not free to go and thus an investigatory detention occurred. An officer may conduct a limited search of an individual subject to an investigatory stop where the officer has a reasonable suspicion that the individual is armed. Statev. Williams (1990), 51 Ohio St.3d 58, 61. Thus, the issue is whether Lowe had a reasonable suspicion to believe that Mr. Harris was armed, based upon the facts.
 {¶ 20} "The facts and circumstances in this case warrant a finding that Lowe was justified in conducting a pat-down search. Upon seeing movement under the blankets, Lowe asked Mr. Harris to put his hands up but he did not comply. Given the anonymous tip, the fact that a black male and a white female were present in the room in accordance with the tip, the large quantity of cocaine suspected to be involved, and Mr. Harris's movement under the blanket, this may have been sufficient to justify a search. However, it was when Mr. Harris refused to remove his hands from under the blanket that, given the totality of the circumstances, it was reasonable for Lowe to fear that Mr. Harris was armed and to conduct a pat-down search to protect his safety and the safety of other officers. Thus, after entering a hotel room with consent in response to an anonymous tip, Lowe was justified in conducting a pat-down search of Mr. Harris for weapons based upon a reasonable suspicion to believe that Mr. Harris was armed, due to his movement under the blankets followed by his refusal to show his hands.
 {¶ 21} "During the pat-down, Lowe testified that he felt a baggy and small hard objects in the right pocket of Harris's shorts. He stated that based on his experience, he immediately believed it was crack-cocaine. Such nonthreatening contraband may be seized if detected though [sic] the sense of touch during a Terry pat-down search for weapons. Minnesota v. Dickerson (1993), 508 U.S. 366, 375-76. There is no testimony to suggest that the pat-down exceeded the scope of a Terry
weapons pat-down. Therefore, Defendant Harris's motion to suppress is accordingly denied."
 {¶ 22} We conclude that the trial court's legal analysis is well-reasoned, and we adopt it as our own. We would only add our observation that Illinois v. Rodriguez (1990), 497 U.S. 177,110 S.Ct. 2793, 111 L.Ed.2d 148, which the trial court cites, and which Harris cites in his support in his brief, does not support Harris, but actually supports the State. Although that opinion might support Harris's proposition that Marker was without actual authority to consent to the police entering the hotel room that she and Harris were occupying, along with Gaines, Rodriguez, supra, also stands for the proposition that a police officer may reasonably rely upon the apparent authority of the occupant of premises to consent to the officer entering upon those premises, in the absence of any indication that the occupant lacks that authority. Where the police officer reasonably relies upon consent given by an occupant of premises to enter upon the premises, the entry upon the premises does not violate the Fourth Amendment's prohibition against unreasonable searches and seizures. Id., at 110 S.Ct. 2801.
 {¶ 23} Harris's sole assignment of error is overruled.
 III {¶ 24} Harris's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.
GRADY and YOUNG, JJ., concur.