OPINION
{¶ 1} Derrick Goodwin appeals from his conviction in the Montgomery County Common Pleas Court for possession of heroin (50 grams but less than 250 grams) pursuant to his no contest plea.
 {¶ 2} On July 26, 2004, City of Dayton Police officers, Gary Huber and Jeffrey Spires, were dispatched to the 1800 block of James H. McGee on reports of a shooting. As the officers approached the area they heard shots being fired and observed a black male and black female coming through a wooded area. The officers exited their cruiser. As Huber was approached by a male and female, Spires continued to walk toward the sound of the shots. The male and female advised Huber that the male had been shot. Both gave a description of the shooter as a black male wearing a hat and a gray long sleeve t-shirt. Huber radioed to other officers the description that he had been given and remained with the victims.
 {¶ 3} Shortly after receiving the broadcast from Huber containing the description of the suspect, Spires observed Goodwin who matched that description. Officer Liddy also approached and the two ordered Goodwin to the ground at gunpoint. There were bystanders in the area, but Goodwin was the only individual wearing a gray long sleeved t-shirt, and a hat.
 {¶ 4} Officer Zwiesler approached the area and observed Spires and Liddy with Goodwin on the ground, who matched the description of the suspect. Goodwin also appeared to have blood on his shirt. Zwiesler handcuffed Goodwin and began patting him down to determine whether he had weapons or evidence of the shooting on his person.
 {¶ 5} As Zwiesler was patting down Goodwin he felt a hard bulge in Goodwin's back pants pocket. From his experience, the shape and feel of the objects, he believed that the bulge was handgun rounds. Upon removing the object from Goodwin's pocket, Zwiesler realized that it was a clear plastic pretzel bag containing a large quantity of narcotics. Goodwin was then placed under arrest.
 {¶ 6} Goodwin filed a motion to suppress the heroin recovered by the officer and for which he was charged with possessing. The trial court overruled the motion. On May 13, 2005, Goodwin appeared and plead no contest to a charge of first-degree felony possession.
 ASSIGNMENT OF ERROR {¶ 7} THE TRIAL COURT ERRED IN OVERRULING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE OBTAINED BY AN UNCONSTITUTIONAL POLICE SEARCH IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND CORRELATIVE PROVISIONS OF THE OHIO CONSTITUTION.
 {¶ 8} The Defendant argues that the officers lacked the reasonable suspicion necessary to justify a lawful detention and that the subsequent search of the Defendant was not done for the officers safety. Further, he argues the officers' actions were an unconstitutional expansion of Terry, to gather evidence. The state argues that the officers did have specific and articulable facts which warranted a lawful detention and that the subsequent search was constitutional and did not exceed the scope ofTerry. We agree.
 {¶ 9} When considering a motion to suppress, the trial court assumes the role of the trier of facts and, as such, is in the best position to resolve conflicts in the evidence and determine the credibility of the witnesses and the weight to be given to their testimony. State v. Retherford (1994),93 Ohio App.3d 586, 639 N.E.2d 498. The court of appeals must accept the trial court's findings of fact if they are supported by competent evidence in the record. Id. Accepting those facts as true, the appellate court must then independently determine, as a matter of law and without deference to the trial court's legal conclusion, whether the trial court erred in applying the substantive law to the facts of the case. Id.
 {¶ 10} The guarantees contained in the Fourth Amendment apply to persons, not places, and are equally applicable to individuals on the streets as well as in their homes. Terry v. Ohio (1968), 392 U.S. 1, 9. Once a police officer has restrained a person's liberty by either physical force or a show of authority the guarantees of the Fourth Amendment are implicated. United Statesv. Mendenhall (1979), 446 U.S. 544, 552.
 {¶ 11} "Although police must generally secure a warrant to engage in a search and make a seizure, that procedure cannot be followed where circumstances merit swift action based upon the `on-the-spot' observations of an officer on the street." Terry
at 20. "A law enforcement officer may make a brief investigatory stop if the officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry at 21. "The propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances." Statev. Freeman (1980), 64 Ohio St. 2d 291.
 {¶ 12} "Where a police officer, during an investigative stop, has a reasonable suspicion that an individual is armed based on the totality of the circumstances, the officer may initiate a protective search for the safety of himself and others." Statev. Bobo (1988), 37 Ohio St.3d 177, 524 N.E.2d 489. Thus, "[a]n officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." Terry.
 {¶ 13} Recently, the United States Court of Appeals for the Sixth Circuit addressed whether an officer's seizure of ammunition was unconstitutional because the patdown was not confined to a search for weapons, as required by Terry. U.S. v.Jackson (2006), 2006 WL 1208077. In that case, a police officer removed an ammunition pouch from an individual during a Terry
stop. Circuit Judge Suhrheinrich wrote as follows:
 {¶ 14} "Daubenmire testified that while patting down Jackson's outer garments he felt in Jackson's pocket `something hard' which `felt like ammunition to me.' Although Daubenmire acknowledged that he did not believe the object to be a gun, when asked if he felt anything that `caused him concern,' Daubenmire responded, `I thought ammunition was in his right front pocket.' Daubenmire further stated that at the time he removed the ammunition pouch, he had not yet completed the patdown. Daubenmire's removal of the ammunition pouch, before he had completed the frisk to exclude the possibility that Jackson also had a gun on him, was reasonable."
 {¶ 15} Consequently, "under the fourth amendment it has long been held that contraband not searched for but discovered during a valid search may be seized and is admissible in evidence." SeeAbel v. United States, 362 U.S. 217, 80 S.Ct. 683,4 L.Ed.2d 668.
 {¶ 16} The record indicates that Defendant was observed in the area of a shooting. He matched the physical description of the shooter given to police — a black male wearing a long-sleeved, grey t-shirt, and a cap. He had blood on his clothing. The officers had not observed anyone else in the area matching the stated description of the suspect. Zwiesler testified that he was concerned for his safety because of the nature of the call, the fact that a weapon had been used in the incident and given the fact that he had made drug and assault arrests in the neighborhood. Zwiesler further testified, that he patted down the outer clothing of Defendant. During this patdown, but before its completion, Zwiesler discovered what he thought were handgun rounds, due to their shape, size and hardness. He then reached into Defendant's pocket to confirm this suspicion, but discovered what he immediately knew to be narcotics.
 {¶ 17} Analyzing the officer's conduct here against the objective standard required by Terry, and based on the totality of the circumstances, we hold that the officers possessed a reasonable suspicion that Defendant had committed a felonious assault and were justified in their protective frisk of Defendant. Moreover, we find the reasoning in Jackson
persuasive. The narcotics, which the officer reasonably thought to be bullets, were discovered before the completion of the protective frisk and were in plain view. See Jackson supra;Horton v. California (1990), 496 U.S. 128. Additionally, the scope of this search did not exceed the boundary of its initial justification, i.e., the protection of the officers. See Statev. Williams (1990), 51 Ohio St.3d 58, 544 N.E.2d 108.
 {¶ 18} In light of the evidence in the preceding discussion, there was no violation of Defendant's Fourth Amendment rights, and Defendant's assignment of error is overruled. Appellee is entitled to judgment as a matter of law. Accordingly, the trial court properly admitted the evidence, and we affirm the trial court's judgment.
Fain, J., and Donovan, J., concur.