{¶ 20} I respectfully dissent from the majority's decision and would uphold the search in this case. I believe that the initial intrusion was justified under these facts. Although the majority cites a line of cases that stand for the proposition that an individual's walking toward an occupied car and then retreating upon observing the police is not sufficient to justify an investigative stop in a high drug area, this case is distinguishable.
 {¶ 21} In this instance, the police saw the defendant wavedown the car before approaching it. They then observed the appellant retreat after realizing the police were present. In addition, the vehicle, which had been stopped in the middle of the road, suddenly pulled away when the presence of the police was realized by the occupants. The cases from this district cited by the majority in support of suppressing this investigative stop do not involve defendants waving down vehicles. They are limited to circumstances where the suspects are observed at a vehicle and the police presence results in their retreating. Although I agree with the majority that individual acts, such as merely being present at a location, walking up to a vehicle, or simply waving at a vehicle, are not enough independently to justify a stop, the presence of all three, at the same time, with all the other factors known to the officers under the totality of circumstances, is enough to justify an investigatory stop.
 {¶ 22} The Supreme Court of Ohio previously set forth guidelines for determining the reasonableness of an investigatory stop. The factors cited include the following: (1) the area was characterized by high drug activity; (2) it was nighttime; (3) the police officer was experienced; (4) the police officer knew how drug transactions took place; (5) the officer saw the defendant do something suspicious; (6) the officer's experience led him to recognize the suspicious act of defendant as the type of act usually done when a suspect is involved in an illegal activity; (7) the police officers were away from the protection of their vehicle. State v. Bobo (1988), 37 Ohio St.3d 177.
 {¶ 23} In State v. Kinds (Oct. 28, 1993), Cuyahoga App. No. 65243, the detective noticed Kinds making motions to several cars from the street corner, "indicative of an attempt to flag down vehicles." The detective stopped to investigate. Applying the factors set forth in Bobo, this court found an investigative stop was reasonable because Kinds flagged down a vehicle in a high crime area at 8:30 in the evening. The detective had six years of experience with the Cleveland police and observed the same type of activity of flagging down cars more than three thousand times. This court found that "[u]nder the totality of these circumstances, [the detective] was reasonable to make an investigatory stop of [Kinds]. [The detective] possessed a reasonable suspicion that appellant `was engaged in or was about to engage in criminal activity.'" Id., quoting State v.Williams (1990), 51 Ohio St.3d 58, 61, certiorari denied (1990),498 U.S. 961.
 {¶ 24} As the majority points out, under the totality of the circumstances, police officers are permitted to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them. And this court must give due deference to the officer's trained eye and experience and view the evidence through the eyes of the officer.
 {¶ 25} In the present case, the area was known to the officers as a "hot spot" for drug activity and the officers testified that they collectively made over one hundred arrests for drug activity at this location. The incident occurred at night, shortly after 11 p.m. Further, the officers testified, based on years of experience, that drug dealers wave at vehicles to get the attention of potential buyers and then approach the stopped vehicle to make a sale. In addition, the testimony revealed that drug dealers and buyers are keenly familiar with the Cleveland undercover vice cars and scatter upon seeing them approach. Finally, the vehicle in this instance stopped in the middle of the roadway as a direct result of appellant's conduct. It then quickly pulled off after the realization that the police had arrived. These observations were specific, articulable facts, offered by the police to support their contention that criminal activity was "afoot."
 {¶ 26} Having established a reasonable, articulable suspicion for the initial intrusion, the police also had a reasonable basis to conduct a pat-down for weapons. Under Terry v. Ohio (1968),392 U.S. 1, 24, a limited protective search of the detainee's person for concealed weapons is justified only when the officer has reasonably concluded that "the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others * * *." "The purpose of the limited search is not to discover evidence of a crime, but to allow the officer to pursue his investigation without fear of violence. Adams v. Williams (1972),407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612, 617. Where a police officer, during an investigative stop, has a reasonable suspicion based on the totality of the circumstances that an individual is armed, the officer may initiate a protective search for the safety of himself and others. State v. Bobo (1988),37 Ohio St.3d 177, 524 N.E.2d 489, paragraph two of the syllabus."State v. Evans (1993), 67 Ohio St.3d 405.
 {¶ 27} Here, Officer Vowell testified that once he came in contact with the appellant to investigate a possible drug sale, he recognized him as an individual he had "checked" for drugs on previous occasions. The officer testified that he recovered marijuana from the appellant on at least one prior occasion. Both officers testified that in many instances, those arrested for drugs in that area were found to be carrying weapons. In addition, the testimony established that the appellant was wearing a hooded sweatshirt and that it was after 11 p.m., in what the officers described as a "hot spot" for drug activity. Based on the totality of the circumstances, the officers were justified in conducting a pat-down for safety.
 {¶ 28} Furthermore, upon initiating the pat-down for weapons, Officer Cornell asked the appellant if "he had any weapons, any needles or anything sharp or any drugs on him." The appellant responded that he did have a bag of marijuana. The officer testified that, based on his experience, he could feel the bag of marijuana through the outside of appellant's clothing. The officer indicated he recovered the two rocks of cocaine in a plastic bag from the appellant's pants pocket, but it is not clear if this was a result of a search or a pat-down recovery. In my view, under these limited facts, it makes no difference.
 {¶ 29} Appellant's admission that he possessed marijuana, coupled with the officers' beliefs that they foiled a felony drug transaction, gave the officers probable cause to arrest appellant. As a result, the officers were justified in searching appellant, because it has long been held that a search may precede the arrest so long as the fruits of the search are not used to support probable cause for the arrest. Rawlings v.Kentucky (1980), 448 U.S. 98, 111.
 {¶ 30} Under these facts, the investigative stop, the pat-down, and the search of appellant were proper. Therefore, I would find that the trial court properly denied appellant's motion to suppress.