[Cite as *State v. Poorman*, 2016-Ohio-7110.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
FULTON COUNTY


State of Ohio                                           Court of Appeals No. F-15-005

    Appellant                                     Trial Court No. 15CR000028

v.

Cory Poorman                                      **DECISION AND JUDGMENT**

    Appellee                                      Decided:  September 30, 2016

* * * * *

Scott A. Haselman, Fulton County Prosecuting Attorney, for appellant.

Charles M. Saunders, for appellee.

* * * * *

**JENSEN, J.**

{¶ 1} This is an appeal from a Fulton County Court of Common Pleas judgment entry granting defendant-appellee Cory Poorman's motion to suppress evidence. For the reasons set forth below, we affirm.

{¶ 2} This case stems from the traffic stop of a vehicle in which Poorman was a passenger. In its sole assignment of error, the state argues that the trial court abused its discretion by granting Poorman's motion to suppress.

{¶ 3} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to evaluate the evidence and the credibility of witnesses. *Id. See also State v. Carter*, 72 Ohio St.3d 545, 552, N.E.2d 965 (1995). Crim.R. 12(F) provides that "where factual issues are involved in determining a motion, the court shall state its essential findings on the record." Thereafter, "an appellate court must accept the trial court's finding of fact if they are supported by competent, credible evidence." *Burnside* at ¶ 8, citing *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982). With respect to the trial court's conclusions of law, however, our standard of review is de novo; therefore, we must decide whether the facts satisfy the applicable legal standard. *Id.,* citing *State v. McNamara*, 124 Ohio App.3d 706, 710, 707 N.E.2d 539 (4th Dist.1997).

{¶ 4} The undisputed facts relevant to this appeal follow.

{¶ 5} Just after 11:00 p.m. on February 20, 2015, Police Sgt. Brian Courtney observed a black Chrysler Concorde driving east on Linfoot Street in Wauseon, Ohio. The driver was Tomas Ramos, Poorman was his sole passenger. Because of the stop and subsequent search of the vehicle, Poorman was arrested and charged with possession of heroin.

2.

{¶ 6} At a February 25, 2015 probable cause hearing, Sgt. Brian Courtney testified that while on patrol in the night in question, he noticed a vehicle without a passenger headlight. He made a U-turn, caught up with the vehicle, and activated his overhead lights." Sgt. Courtney explained, "Initially, it looked like the headlight was out, but actually it was working but it was focusing up in the sky."

{¶ 7} When Sgt. Courtney approached the vehicle, the driver "looked familiar," but Sgt. Courtney "wasn't 100 percent for sure who it was." So, he asked the driver for his license. The driver informed Sgt. Courtney that he did not have a driver's license on him. It was at that time, that Sgt. Courtney realized who the driver was and that he was "known to the Wauseon Police Department [as] never having a valid driver's license."

{¶ 8} Sgt. Courtney testified that because Ramos "did not have a valid driver's license," he placed Ramos in the patrol car. At the time, Ramos was not under arrest. Rather, Sgt. Courtney planned on issuing Ramos a citation for driving on a suspended license. When Officer Huner arrived on scene, Sgt. Courtney instructed Huner to "get an identification" from appellee, the front seat passenger. Sgt. Courtney admitted that he had seen appellee before, but that they had never met.

{¶ 9} Officer Huner explained that he asked the sole passenger of the vehicle for identification and called the same into dispatch. Moments later, Huner was notified that there was an outstanding warrant for Poorman's arrest. When Officer Huner performed a search incident to arrest, he found marijuana in Poorman's pocket. Moments later, the

3.

Canine Officer arrived and her dog alerted to the vehicle. When searching the vehicle, officers found heroin in a cigarette pack in the passenger door.

{¶ 10} When asked why a canine unit was called to the scene, Sgt Courtney explained that "one of the indicators" for calling the unit was Mr. Ramos's record. No other indicators were mentioned. Rather, Sgt. Courtney explained, "[t]he fact is that [Ramos is] a known drug dealer in town."

{¶ 11} At the close of the probable cause hearing, the trial court determined that there was substantial credible evidence presented that Poorman committed the offense of possession of heroin, a felony of the fifth degree. He was ordered bound over to the grand jury for consideration on indictment.

{¶ 12} On March 17, 2015, the grand jury issued a one count indictment alleging Poorman violated R.C. 2925.11(A), possession of heroin, a felony of the fifth degree.

{¶ 13} Poorman filed a motion to suppress evidence arguing, in part, that Sgt. Courtney was without probable cause to make the initial traffic stop. Attached to the motion to suppress was the sworn affidavit of Tomas Ramos. Mr. Ramos avers:

> Officer Courtney knows me since high school, he said he pulled me over for my headlights, but the headlights worked. He pulled my niece over in that car before. He already had a preconceived notion as to the presence of drugs. I heard the female officer say, "I want to search that car anyway." I saw Officer Courtney touch the headlight. I was not speeding

4.

and I pulled over into the parking lot to get formula and I was there to get the formula.

In his motion, Poorman questions why there was no video footage of the stop, despite Sgt. Courtney's cruiser being equipped with a working dash camera. Poorman asserts that Police Department records indicate that Sgt. Courtney's cruiser recorded the stops both immediately prior to and immediately after the stop in question.

{¶ 14} At the hearing on Poorman's motion to suppress, Sgt. Courtney testified that immediately prior to stopping the vehicle in which appellee was a passenger, he issued a traffic warning to a female driver with an inoperable headlight. After the stop, he headed south on Shoop Avenue. As he approached the Linfoot Street intersection Sgt. Courtney realized that his in car camera was still recording from the previous stop so he reached up and manually shut off the tape recorder to "stop the recording of that previous traffic stop."

{¶ 15} At approximately 11:14 p.m., Sgt. Courtney turned west on Linfoot Street, and "noticed that the vehicle that was proceeding eastbound did not have [an] operating light on the right side, the passenger side of the vehicle." Sgt. Courtney explained that he "did not observe any light emitting from the right side."

Q. * * * What did you do then?

A. I pulled into Wayside Trailer Park * * * backed up, turned around, and started heading eastbound to catch up to that vehicle that I had just passed.

5.

Q. And where did the vehicle go from that location?

A. The vehicle sped up a little bit, I mean I was doing probably sixty-five trying to catch up to that vehicle because it had sped up. It's a thirty-five zone and I was doing everything to catch up to it, and I finally caught up to it at Shoop and Linfoot Street.

Q. Okay. Where did it go from there?

A. At that time it stopped at the light because it got caught by a light, and as it waited a short time to stop, make sure there's not traffic it turned right onto Shoop Avenue.

* * *

At that time I activated my overhead lights, and then the vehicle got in the center lane and then turned into the Chief Supermarket, and drove around and pulled up front, in front of the windows, the front of the store.

Q. Okay. What happened then?

* * *

A. I got out of my patrol car, walked up to the vehicle, and said I needed to see your driver's license and registration. I said the reason why I stopped you is because you got a headlight out. As I'm talking to them, then I realized it Tomas Ramos.

Q. Okay.

A.  I've had dealing with Tomas Ramos before for no driver's license, I had heard that he's been driving.  Talk through the department that he's driving right now on a suspended license.

\* \* \*

And I was like, Tomas, and he's like, yea, it's like, what are you doing driving?  And he's like, I had, I got to go get formula, and I was like, okay, he's like why did you stop me, and I said, your headlight is out.  So, he's like, I want to see.  So I said, step out.  So we go out and look, as we go around the light is on, but it's shining upward, it wasn't properly mounted.  It looked like the car had been in a crash and it wasn't, it was like loose in there and it was pointing upwards.

{¶ 16} During cross-examination, Sgt. Courtney explained that when he initially pulled Ramos over, "[i]t appeared that the light was not working at all."  When he went to the front of the car, however, he realized that the headlamp was working, albeit "pointing straight up."

{¶ 17} When questioned, upon cross-examination, about the dash camera Sgt. Courtney "corrected" his earlier statement indicating that he "stopped the recording of the video, but did not shut the camera off."  He explained, the camera "was still burning the previous traffic stop to the DVD, and that's why it did not turn on and capture the traffic stop."  When asked if it was "physically impossible" to turn the camera back on, Sgt. Courtney explained, "I could have, but the thing is, is when I turned my lights on, my

7.

overhead lights, it automatically turns the camera on and that's what I had anticipated that my camera of doing, but it didn't do that because it was still burning [the previous stop]." Sgt. Courtney indicated that he did not check to see if the camera was recording during the subject stop because he was "more focused" on his safety and the safety of the intern riding in his vehicle.

{¶ 18} Photos of the automobile's front end were entered into evidence. It was dark when the photos were taken and the position of the headlight is hard to discern. Sgt. Courtney explained that the photos were taken while the automobile was parked in the impound lot and that he did not attempt to start the automobile before taking the photographs.

{¶ 19} Officer Mitchell Huner testified that it is standard procedure for an officer to back up another officer on a traffic stop, if just to "[m]ake sure everything is ok." According to Officer Huner, he arrived "a few minutes" after the stop was initiated and was instructed by Sgt. Courtney to obtain identification from the vehicle's passenger. Poorman was arrested when Officer Huner discovered the outstanding warrant. Marijuana was found in Poorman's front pocket. A drug dog alerted to the front passenger door of the automobile. Patrolman Huner assisted in the search of the automobile and found "a syringe and rolling papers in the center console."

{¶ 20} Patrolman Huner indicated that he never looked at the vehicle's headlamps. He also indicated that the video camera in his cruiser does not work and had not worked for over a year, despite reporting the same to his supervisors.

8.

{¶ 21} Dawn Belford is a Canine Officer for the Wauseon Police Department. Officer Belford testified that she was called to the scene at 11:18 p.m. When she walked her drug-sniffing dog around the vehicle, the dog indicated at both the driver and passenger doors. The inside of the vehicle was searched, and, in addition to the syringe mentioned above, a cigarette box with bindles of heroin was found.

{¶ 22} The trial court allowed the parties to file supplemental briefs after the hearing on the motion to suppress. On July 16, 2015, the trial court issued judgment entry granting Poorman's motion to suppress.

{¶ 23} In its sole assignment of error, the state of Ohio, asserts that the trial court erred when it granted Poorman's motion to suppress. It then asserts three arguments in support of its sole assignment of error:

1. Did the trial court err in considering the subjective motivations of the officer who made the traffic stop when there was probable cause (or at least reasonable, articulable suspicion) to believe that the driver of the vehicle at issue had committed a traffic violation?

2. Did the trial court err in granting the Motion to Suppress when probable cause to arrest Appellee and to search the interior of the vehicle in which Appellee had been traveling arose during the time period associated with the resolution of the traffic stop that was the basis of Appellee's original detention?

9.

3. Did the trial court err in granting the Motion to Suppress when articulable facts existed which gave rise to a reasonable suspicion that criminal activity was afoot, thereby permitting a lawful search for illegal drugs?

{¶ 24} In granting Poorman's motion to suppress, the trial court describes, in great detail, the testimony presented. It does not, however, place on the record any findings of fact. Such omission is contrary to Crim.R. 12(F), which provides that "[w]here factual issues are involved in determining a motion, the court shall state its essential findings on the record."

{¶ 25} When ruling on a motion to suppress evidence, the trial court serves as the trier of fact and is the primary judge of the credibility of the witnesses and the weight to be given the evidence presented. *State v. Johnson*, 137 Ohio App.3d 847, 850, 739 N.E.2d 1249 (12th Dist.2000). Ordinarily, we defer to the trial court's factual findings if they are supported by competent and credible evidence, but we review de novo the trial court's application of the law to those facts. *Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, at ¶ 8. "While it is error for the trial court to fail in providing requested findings of fact, it is not prejudicial where the record provides an appellate court with a sufficient basis to review the assignments of error." *State v. Brown*, 2d Dist. No. 24297, 2012-Ohio-195, ¶ 10, citing *State v. Benner*, 40 Ohio St.3d 301, 317, 533 N.E.2d 701 (1988).

10.

**{¶ 26}** Here, after describing, in great detail, the testimony, affidavit, and evidence presented the trial court's judgment entry states:

This case presents the Court with a difficult scenario, due in large part to the significant number of "coincidences" that occurred here. What would normally be a ten minute interlude, for a "headlight" problem morphed into a forty-five minute "search and seizure," foray, of major proportions. Apparently it was just a "coincidence," that Sgt. Courtney was patrolling Mr. Ramos' neighborhood at 11:15 p.m. on February 20, 2015; merely a "coincidence" that a "one lamp" encounter would justify a turn around and high speed chase; merely a "coincidence" that the "on-board camera" was mysteriously shut off; merely a "coincidence" that the "lamp" was actually "working"; merely a "coincidence" that Mr. Ramos just "happened" to be in the car that was "stopped" for a "headlight" violation; and merely a coincidence that Sgt. Courtney just happened to "know" that Ramos was driving on a "suspended license."

The number of "coincidences" occurring here, one upon the other, has morphed into a "pattern," and a suspicion of good motive. One might even call it a "fishing expedition," and I do. Just as in the Rules of Evidence, where it is stipulated that "inferences" cannot be drawn upon "other inferences," so too here, with the number of coincidences that have

occurred, leading up to the "stop here, all being piled one upon the other, are too "coincidental," such that the "arrest" cannot be supported.

In that context the Court must note that the Defendant has also raised a number of credibility issues here. The fact that it was revealed, and then admitted on Cross-Examination, by Sgt. Courtney, that he did have some past but significant credibility issues of his own, does not help the state's case here. For that reason alone the Court will have to take some of Sgt. Courtney's salient testimony, with a "grain of salt."

{¶ 27} While the court's judgment entry is not organized is such a way as to easily decipher any specific findings of fact, the record nonetheless provides sufficient basis for us to review the stated assignment of error.

{¶ 28} An investigative stop by a police officer is one of the common exceptions to the Fourth Amendment warrant requirement. *Terry v. Ohio*, 392 U.S. 1, 20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). To justify a brief investigative stop or detention of an individual pursuant to *Terry*, a police officer must be able to cite specific articulable facts which, taken together with rational inferences derived from those facts, give rise to a reasonable suspicion that the individual is engaged or about to be engaged in criminal activity. *State v. Williams*, 51 Ohio St.3d 58, 60, 554 N.E.2d 108 (1990). "'Reasonable suspicion exists in traffic stops where a police officer has observed a traffic violation." *State v. Garnett*, 10th Dist. Franklin No. 09AP-1149, 2010-Ohio-5865, ¶ 15 (citation omitted). Under the "fruit of the poisonous tree" doctrine, evidence and witnesses

12.

discovered as a result of a search in violation of the Fourth Amendment must be excluded from evidence. *State v. Dixon*, 101 Ohio App.3d 552, 557, 656 N.E.2d 1 (6th Dist.1995) (citations omitted).

{¶ 29} There is no dispute that driving without a front headlamp is a traffic violation. Here, however, Sgt. Courtney admits that the vehicle's headlamps were functioning, but that one lamp was mounted or adjusted in such a way that it was out of focus and aim in violation of regulations prescribed by the director of public safety. *See* R.C. 4513.19(A). Having reviewed the record before us, we conclude that the trial court found Sgt. Courtney's testimony not credible as to many events leading up to and including the traffic stop. We further find there was sufficient competent credible evidence before the trial court to justify a finding – though not specifically articulated – that Sgt. Courtney was without reasonable suspicion to initiate the traffic stop. Thus, we find no merit in the state's first argument under its sole assignment of error.

{¶ 30} Because Sgt. Courtney was without reasonable suspicion to initiate the traffic stop, any evidence obtained as a result of the stop should have been suppressed as the fruit of an illegal seizure. Accordingly, there is also no merit to the state's second and third arguments under its sole assignment of error.

{¶ 31} For the foregoing reasons, we affirm the judgment of the trial court. Appellant is ordered to pay the costs of this appeal under App.R. 24.

Judgment affirmed.

13.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.                       _____

                                                                       JUDGE

Thomas J. Osowik, J.

                                            _____

James D. Jensen, P.J.                                  JUDGE
CONCUR.

                                            _____

                                                                           JUDGE

14.