OPINION JUDGMENT ENTRY
{¶ 1} Defendant-appellant, Craig Howard, appeals his conviction and sentence from the Licking County Court of Common Pleas on one count of possession of crack cocaine in violation of R.C. 2925.11 (A)(C)(4)(c), a felony of third degree. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF FACTS {¶ 2} On December 13, 2002, the Licking County Grand Jury indicted appellant on one count of possession of crack-cocaine in an amount equal to or exceeding five grams but less than ten grams in violation of R.C. 2925.11 (A)(C)(4)(c), and forfeiture specification in violation of R.C. 2925.42(A)(1)(a) and and/or (b). At his arraignment on December 30, 2002, appellant entered a plea of not guilty to the charges contained in the indictment.
 {¶ 3} Thereafter appellant filed a "Motion to Suppress" on February 5, 2003, arguing, in part, that his Constitutional rights were violated because the search exceeded the scope of the search warrant issued in the case. A hearing was held on the motion beginning on March 7, 2003 and concluding on March 14, 2003. The following evidence was adduced at the suppression hearing.
 {¶ 4} On December 4, 2002, Detectives from the Newark Police Department and the Central Ohio Drug Task Force executed a search warrant on the home at 1006 Shaw Drive, Newark, Ohio. The affidavit in support of the issuance of the search warrant and the search warrant itself were admitted into evidence without objection as State's Exhibits 1 and 2, respectively. The appellant was not named within the warrant. The warrant only stated: "The residence of 1006 Shaw Drive is [sic] Amy Ropp and her unknown boyfriend, described as a 508-510, 180 pound black male." The command portion of the warrant stated: "You therefore, are commanded to begin the search within three (3) days of this date, the premises and/or persons above-described for the property specified, and if the property be there found, seize it, leaving a copy of this writ and a receipt for the property taken as required by law. * * *"
 {¶ 5} Detective Douglas Bline was one of the officers who participated in the execution of the search warrant. Detective Bline testified that another member of the entry team threw a "Flash Bag" into the residence. The appellant, a second black male and a white female had been observed sitting on the couch. Upon entry into the premises, the appellant and all others present were ordered to the floor. A total of six people were found to be inside the apartment. On the table in front of the couch where appellant had been seated, the officer could see in plain view "digital scales and leafy substances * * * vegetation on table * * * [and] little pieces of baggies * * *" (T., March 7, 2003 at 25-26).
 {¶ 6} After a sweep of the house was completed, Detective Bline returned to the area where appellant and others are on the floor. By this time, appellant had been handcuffed by other officers of the entry team. Detective Bline approached appellant and ask him his name. Upon hearing appellant's name, Detective Bline recalled that he had effectuated a traffic stop involving appellant in the past. The detective proceeded to ask appellant if he had "any weapons, knives, anything that is going to stick, poke or anything like that." (Id. at 17-18). The appellant replied that he does not have any weapons on his person. Detective Bline then ask appellant if he had any drugs on his person. The officer testified that appellant responded "I don't know". (Id. at 19). Detective Bline further testified that he believed appellant was under the influence of marijuana. On cross-examination the detective stated: "you could smell it, for lack of a better term, on his breath. There was a smell of marijuana on his breath, his person, his eyes are very indicative of someone using marijuana, which is blood-shot and very watery." (Id. at 33).
 {¶ 7} Detective Bline proceeded to conduct a pat-down of appellant. While patting down the outside the right front pocket area of the appellant's pants the officer testified as follows: "Q. Okay. And what, if anything, did you feel, sense or detect?
 {¶ 8} "A. I feel a baggie with crack-cocaine. I mean, my perception was crack-cocaine instantly.
 {¶ 9} "Q. In your experience as a patrol officer and later as a detective, have you had occasion to pat-down, feel something in their pockets and later confirm that it is some kind of controlled substance?
 {¶ 10} "A. Yes, Sir, numerous times.
 {¶ 11} "Q. And specifically crack-cocaine?
 {¶ 12} "A. Yes, Sir.
 {¶ 13} "Q. Okay. And as you patted down the outside of Mr. Howard's pocket, what conclusion did you come up with as to the contents of that pocket?
 {¶ 14} "A. There was a large amount of crack-cocaine in that front, right pocket.
 {¶ 15} "Q. Did you make that conclusion based on your experience and training?
 {¶ 16} "A. Yes, Sir.
 {¶ 17} "Q. Did you make that conclusion at the same time that you were making an effort to determine whether he had a weapon of any nature in that pocket"
 {¶ 18} "A. Yes, Sir.
 {¶ 19} Id. at 21-22.
 {¶ 20} The appellant testified that the officer did not conduct a pat-down prior to reaching inside his pockets. He further testified that he had no idea what was on the table in front of the couch. He could not recall whether or not Detective Bline had ask him if he was in possession of any contraband
 {¶ 21} At the conclusion of the hearing, the trial court overruled appellant's Motion to Suppress, holding that the detention, pat-down and seizure of the contraband was proper. The court issued an entry to that effect on March 14, 2003, and further directing the prosecuting attorney to prepare findings of fact and conclusions of law. Those findings and conclusions, signed only by the prosecutor and the trial judge, were filed on April 8, 2003.
 {¶ 22} On May 2, 2003, appellant withdrew his former plea of not guilty and entered a plea of no contest to the charge of possession of crack-cocaine in violation of R.C. 2925.11
(A)(C)(4)(c). The court denied the motion for forfeiture. The court deferred sentencing and ordered a pre-sentence investigation report.
 {¶ 23} On May 28, 2003, the trial court conducted a sentencing hearing. Appellant was sentenced to a term of two years in a state penal institution. A mandatory $5,000 fine and court costs were also imposed. The court ordered the money taken from appellant which had formed the basis of the forfeiture specification in the indictment be applied to the fines and costs. In addition, appellant's driver's license was suspended for a period of six months.
 {¶ 24} Appellant timely appealed and raises as his sole assignment of error:
 {¶ 25} "The trial court committed harmful error in denying the defendant-appellant's motion to suppress evidence."
 I {¶ 26} Appellant in his sole assignment of error challenges the trial court's denial of his Motion to Supress.
 {¶ 27} There are three methods of challenging on appeal the trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. State v. Fanning (1982), 1 Ohio St.3d 19,437 N.E.2d 583; State v. Klein (1981), 73 Ohio App.3d 486,597 N.E.2d 1141; State v. Guysinger (1993), 86 Ohio App.3d 592,621 N.E.2d 726. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. State v.Williams (1993), 86 Ohio App.3d 37, 619 N.E.2d 1141, overruled on other grounds. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v.Curry (1994), 95 Ohio App.3d 93, 641 N.E.2d 1172; State v.Claytor (1993), 85 Ohio App.3d 623, 620 N.E.2d 906.
 {¶ 28} Appellant argues that the seizure of the crack-cocaine exceeded the authority granted by the search warrant.
 {¶ 29} There is no dispute that the warrant in this case was not a so-called "all person" warrant. See State v. Kinney
(1998), 83 Ohio St.3d 85, 698 N.E.2d 49. However, that does not end our inquiry. Whether law enforcement officers may detain and pat-down persons encountered during the execution of a narcotics search warrant in a private home is far from settled. In Guy v.Wisconsin (1993), 509 U.S. 914, 113 S.Ct. 3020 the United States Supreme Court denied a petition for writ certiorari to the Supreme Court of Wisconsin. However, in a dissenting opinion written by Justice White, and joined by Justice Thomas, the court noted that the case involved a pat-down search of persons found on the premises while executing a search warrant for cocaine at a private residence. 509 U.S. 914, 113 S.Ct. at 3021. Justice White noted that the courts are divided on this issue: "Specifically, courts disagree over whether this Court's holding in Ybarra v. Illinois (1979), 444 U.S. 85, 100 S.Ct. 338, 62, L. Ed.2d 238, that police could not frisk all persons present in a public tavern while executing a search warrant based merely on their presence there applies where a search warrant for drugs is executed in a private home. The court below distinguishedYbarra, on the grounds that occupants found in a private residence unlike those in a public tavern, are "very likely" to be associated with any illegal narcotics activity on the premises and thus likely to be armed and dangerous. 172 Wis.2d at 98,492 N.W.2d at 316 * * * The Washington Supreme Court in [State v.]Broadnax (1982), 98 Wn.2d 289], however, rejected this reasoning and held Ybarra, to be controlling * * *
 {¶ 30} In my view, the issue is of significant practical importance to law enforcement officers executing search warrants and to citizens they encounter while doing so. I would grant certiorari to resolve the constitutional question." 509 U.S. 914,113 S.Ct. 3021. (Citations omitted).
 {¶ 31} In Michigan v. Little (1985), 474 U.S. 1024, 106 So. Ct. 580, the court again denied a petition for writ certiorari in a case where the police, while executing a search warrant for narcotics, detained and patted-down an individual found on the premises. However, Chief Justice Berger, with whom Justice Blackmun and Justice Rehnquist joined in dissent noted: "Ybarra
in no sense controls this case * * * Respondent Little was not a member of the public present in a public place. He and Johnson were the only two people present in a dwelling that a Magistrate had determined was probably a center of illicit drug activity. Upon entering Johnson's home, the police discovered packets of heroine which Johnson had attempted to dispose of, indicating that illicit drug activity had occurred as recently as moments before their entry. Evidence of such activity could have been placed on the person of someone in the premises as easily as it could have been hidden in the dresser drawer. Under the circumstances, the police reasonably concluded that the nexus between Little and the illicit drug activity was sufficiently close to give them probable cause to conduct a cursory search of respondent's person as part of their search of Johnson's home pursuant to a valid search warrant.
 {¶ 32} "The Michigan Court of Appeals concluded the search became unreasonable as soon as Officer Allen discovered the respondent was unarmed; Allen's determination coincided, however, with his discovery of what he reasonably suspected was narcotics paraphernalia. At that point, Officer Allen could confirm or dispel that suspicion by removing the object, only marginally increasing the intrusiveness of the search. Under these circumstances, the justification for the search outweighed the invasion that the search entailed. * * *" 474 U.S. 1024, 1026,106 S.Ct. 580, 581.
 {¶ 33} Appellant did not contest the officer's right to detain him when executing the search warrant. (T., March 14, 2003 at 33). Accordingly, the only issue before this court is the pat-down search of his person.
 {¶ 34} In Terry v. Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868, the United States Supreme Court held that a limited pat-down search is justified when an officer reasonably concludes the individual, who suspicious behavior he is investigating at close range, may be armed and thus, dangerous to the police officers and others. Id. at 24. Officers need not forsake reasonable precautionary measures during the performance of their duties.State v. Evans (1993), 67 Ohio St.3d 405, 409, 1993-Ohio-186,618 N.E.2d 162. The question we must ask is whether the officer had a reasonable, objective basis for frisking appellant. SeeState v. Andrews (1991), 57 Ohio St.3d 86, 565 N.E.2d 1271. In determining whether an officer's beliefs are reasonable, a court must consider the totality of the circumstances involved in the stop. State v. Bobo (1988), 37 Ohio St.3d 177, 180,524 N.E.2d 489. An officer need not testify he was actually in fear of the suspect, but he must articulate a set of particular facts which would lead a reasonable person to conclude the suspect may be armed and dangerous. Evans, supra, at 413, 618 N.E.2d 162. Rather, "[e]vidence that the officer was aware of sufficient specific facts as would suggest he was in danger" satisfies the test set forth in Terry, supra. Id.
 {¶ 35} In State v. Evans, supra, the Ohio Supreme Court in reviewing the scope of a pat-down search for weapons stated: "[t]he right to frisk is virtually automatic when individuals are suspected of committing a crime, like drug trafficking, for which they are likely to be armed. See State v. Williams (1990),51 Ohio St.3d 58, 554 N.E.2d 108. See, also, United States v.Ceballos (E.D.N.Y. 1989), 719 F. Supp. 119, 126: `The nature of narcotics traffic today reasonably warrants the conclusion that a suspected dealer may be armed and dangerous.'"67 Ohio St.3d at 413, 618 N.E.2d at 169.
 {¶ 36} In the case at bar, the affidavit in support of the search warrant admitted as State's Exhibit 1 establishes that a confidential informant had made controlled buys of crack-cocaine from the residence that was being searched. A search warrant was issued for the purpose of searching the residence for drugs. Upon entering the premises, the officers noted digital scales and vegetable matter on a coffee table in the living room. When ask if he had any contraband on his person, the appellant responded: "I don't know." The officer further testified he believed the appellant was under the influence of marijuana. As we noted inState v. Hawkins (July 22, 1996), 5th Dist. No. 95-CA-55 "[a]fter completing the search of the premises, it would have been unreasonable to require the officers to allow appellant to go without first checking for weapons by conducting a pat-down search since such a search was not conducted by the SWAT team. As noted above, an officer is not required to take unnecessary risks in the performance of his or her duties. Terry at 23."
 {¶ 37} Upon our review of the record, we find that the detective had reasonable, articulable suspicions sufficient to justify a pat-down search of the appellant. Based upon the totality of the circumstances, we find that a reasonable and prudent police officer would have conducted a protective search for weapons.
 {¶ 38} Appellant further contends that the scope of the pat-down search exceeded that permitted by Terry. The United States Supreme Court established the "plain feel" doctrine as it relates to a Terry pat-down search for weapons for officer's safety in Minnesota v. Dickerson (1993), 508 U.S. 366,113 So. Ct. 2130. Therein the court held the police may seize contraband detected through the sense of touch during a protective pat-down if the officer has probable cause to believe that the item is contraband before seizing it. 508 U.S. at 376.
 {¶ 39} In this case, the detective who conducted the pat-down search testified that he immediately recognized the object in appellant's pocket as crack cocaine. Under the plain feel doctrine, the incriminating nature of the object was "immediately apparent" to the detective. Accordingly, pursuant to Minnesota,
the detective had probable cause and he could seize the crack cocaine without first obtaining a warrant.
 {¶ 40} Appellant's sole assignment of error is overruled.
 {¶ 41} For the foregoing reasons, the judgment of the Court of Common Pleas, Licking County, Ohio, is hereby affirmed.
Edwards, J., and Boggins, J., concur
 {¶ 42} For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Licking County, Ohio, is hereby affirmed. Costs to appellant.