JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Raymond Anderson, appeals from the judgment of the Common Pleas Court, rendered after a jury verdict, finding him guilty of compelling prostitution and importuning, and sentencing him to six months incarceration on the importuning charge and two years of community control sanctions on the charge of compelling prostitution. We affirm.
 {¶ 2} In September 2005, a Cuyahoga County Grand Jury returned a three-count indictment against Anderson. Count one charged him with compelling prostitution in violation of R.C. 2907.21(A)(2), count two charged him with importuning in violation of R.C. 2907.07(A), and count three charged him with attempted rape in violation of R.C. 2907.02 and2923.02. Counts one and two each also contained notice of prior conviction and repeat violent offender specifications. Prior to trial, the State nolled count three and the specifications contained in counts *Page 2 
one and two.
 {¶ 3} The victim, U.R.,[1] testified at trial that in September 2005, she was twelve years old. She lived with her grandmother on Vineyard Avenue in Cleveland and took the bus to and from school every day. The bus stop was close to her home, at the end of the street.
 {¶ 4} On September 13, 2005, the bus dropped her off at her stop at approximately 2:40 p.m. No other children got off the bus with her and there were no other children outside. Her grandmother was not at home that day.
 {¶ 5} As U.R. was walking home, she saw a man sitting in the backseat of a car that was parked almost directly across the street from her house. U.R. continued walking, and then saw the man get out of the car and cross the street toward her. U.R. testified that he came up behind her, ran his fingers through her hair, and then said, "[d]o you want a blow for 50 cents?" She admitted that he never used the word "job" when he was speaking to her, but testified that she understood his words to mean "suck his private part." In addition, she testified that she did not smoke cigarettes and was not carrying any cigarettes, either openly or hidden, that day.
 {¶ 6} U.R. testified that she quickly walked away from the man and hid on the side of a house that was located around the corner. When she looked out and no longer saw the man, she went home and called her mother, but did not tell her what *Page 3 
had happened. When she saw her next-door neighbor, Parisia Sanchez, come home a short time later, U.R. went next door and told her what had happened.
 {¶ 7} Sanchez testified that U.R. appeared "scared" as she pointed out the man who had approached her, who was again sitting in the car across the street. Sanchez then called the police, who responded immediately. The male had disappeared by then, however.
 {¶ 8} Cleveland police officer Daniel Dickens testified that Sanchez and U.R. gave him a description of the suspect. Dickens and his partner then toured the area, looking for the suspect. They returned a short time later with a suspect, but both Sanchez and U.R. indicated that he was not the man who had approached U.R.
 {¶ 9} Dickens testified that a short time later he saw Anderson standing on the sidewalk on a street that was two streets away from Vineyard Avenue. He approached Anderson and told him that he matched the description of a suspect who had committed a crime on Vineyard Avenue. According to Dickens, Anderson then asked what the crime involved. When Dickens told him it was an attempted kidnaping, Anderson stated that he had been on Vineyard Avenue, and had offered a girl 50 cents, but did not try to kidnap her.
 {¶ 10} The police drove Anderson back to U.R., who identified him as the man who had approached her. Dickens testified that the police arrested Anderson, and then advised him of his Miranda rights, but did not ask him any questions. Anderson *Page 4 
then volunteered that he had offered U.R. 50 cents to braid his hair. Detective James Butler testified that he interviewed U.R. the day after the incident. After giving her statement, U.R. identified Anderson from a photo array that Butler showed her.
 {¶ 11} The next day, Detective Butler took a statement from Anderson, after again advising him of his Miranda rights. According to Butler, Anderson was nervous during the interview, and jumped up and waved his arms at various points during the interview.
 {¶ 12} In his statement, Anderson claimed that he had been walking down Vineyard Avenue when he saw a young girl "staring at [him] so hard." He thought it would be rude if he did not say anything to her, so he asked her if she knew how to braid hair. She nodded her head at first, but then shook it to say "no," and Anderson kept walking. He then went to a store to buy beer and chicken wings. When he realized he was a quarter short, he went outside and told girl that if she would loan him 25 cents, he would pay her 50 cents later. The girl did not have a quarter, however, so Anderson walked back to his car, got a quarter, and then returned to the store for chicken wings.
 {¶ 13} When he went back to his car, he noticed three young boys staring at him and whispering about him. He assumed that one of the boys was the girl's boyfriend and "they were trying to get [him] into some kinda trouble or something," so he ignored them. *Page 5 
 {¶ 14} Anderson then walked to a friend's house. As he was walking away a short time later, the police arrested him. Anderson denied touching the little girl or asking her for a blow job.
1. MANIFEST WEIGHT OF THE EVIDENCE
 {¶ 15} In his first assignment of error, Anderson argues that his convictions were against the manifest weight of the evidence.
 {¶ 16} When considering an appellant's claim that the conviction is against the manifest weight of the evidence, the reviewing court sits essentially as a "`thirteenth juror' and [may] disagree with the fact finder's resolution of the conflicting testimony.'" State v.Thompkins (1997), 78 Ohio St.3d 380, 387, quoting Tibbs v. Florida
(1982), 457 U.S. 31, 42, 72 L.Ed.2d 652, 102 S.Ct. 221. The reviewing court must examine the entire record, weighing the evidence and considering the credibility of witnesses, while being mindful that credibility generally is an issue for the trier of fact to resolve.State v. Thomas (1982), 70 Ohio St.2d 79, 80. The court may reverse the judgment of conviction if it appears that the fact finder, in resolving conflicts in the evidence, "`clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Thompkins, 78 Ohio St.3d at 387, quotingState v. Martin (1983), 20 Ohio App.3d 172, 175. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Id. *Page 6 
 {¶ 17} Anderson was convicted of compelling prostitution and importuning. R.C. 2907.21(A), regarding compelling prostitution, provides that "no person shall knowingly * * * encourage, solicit, request * * * a minor to engage in sexual activity for hire * * *." R.C. 2907.07(A), regarding importuning, provides that "no person shall solicit a person who is less than 13 years of age to engage in sexual activity with the offender * * *."
 {¶ 18} Anderson contends that his convictions were against the manifest weight of the evidence because U.R. admitted that she never heard him say the word "job" when he was speaking to her, and he denied that he asked her for a blow job. He further contends that if the incident had been as upsetting to U.R. as she claimed, she would have immediately told her mother when she telephoned her. Finally, he argues that U.R. admitted that he never touched her breasts, buttocks or pubic area.
 {¶ 19} We are not persuaded by these arguments. The jury could have reasonably inferred that when Anderson approached U.R., touched her hair, and then suggested a "blow" for 50 cents, he was referring to the act of fellatio, which is commonly known as a "blow job." The fact that he did not say the word "job" is not dispositive. Although Anderson suggests there are other explanations for the word "blow," such as a cigarette, there was no evidence at trial that he was referring to anything else. The fact that he did not touch U.R.'s breasts, buttocks, or pubic area *Page 7 
while suggesting a "blow" is also not dispositive. Anderson's words were sufficient alone to demonstrate that he solicited U.R. for sexual activity.
 {¶ 20} Finally, Anderson's inconsistent explanations for his conduct demonstrate that his convictions were not against the weight of the evidence. When he was arrested, Anderson told the police that he had offered U.R. 50 cents to braid his hair. A few days later, however, when he gave his statement to Detective Butler, Anderson said that he offered U.R. 50 cents if she would loan him a quarter (even though he had the necessary quarter in his car) and made no mention of paying her to braid his hair. In light of Anderson's inconsistent statements, the jury did not lose its way in rejecting his version of what happened and finding him guilty of compelling prostitution and importuning.
 {¶ 21} Appellant's first assignment of error is overruled.
2. INEFFECTIVE ASSISTANCE OF COUNSEL
 {¶ 22} In his second assignment of error, Anderson contends that he was denied his constitutional right to effective assistance of counsel. In order to establish ineffective assistance of counsel, a defendant must demonstrate that counsel's performance fell below an objective standard of reasonable representation and that he was prejudiced by that performance. State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus, certiorari denied (1990), 497 U.S. 1011,111 L.Ed.2d 768, 110 S.Ct. 3258; State v. Lytle (1976), 48 Ohio St.2d 391, vacated on other *Page 8 
grounds (1978), 438 U.S. 910, 57 L.Ed.2d 1154, 98 S.Ct. 3135; andStrickland v. Washington (1984), 466 U.S. 668, 80 L.Ed.2f 674,104 S.Ct. 2052. Prejudice is established when the defendant demonstrates "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, supra at 694.
 {¶ 23} Anderson asserts that trial counsel was ineffective because he "did not file a single motion on behalf of appellant, nor did trial counsel secure any witness[es] to testify on behalf of appellant's character." The record belies this argument, however. Trial counsel filed a motion for a bill of particulars, request for notice of evidence to be used by the State, and a motion for discovery and to examine exculpatory and mitigatory material. With respect to calling character witnesses to testify on appellant's behalf, trial counsel is entitled to a strong presumption that his conduct falls within the wide range of reasonable assistance. See Strickland, supra. Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and debatable trial tactics do not establish ineffective assistance of counsel. State v. Hoffner, 102 Ohio St.3d 358,2004-Ohio-3430, at ¶ 45. Moreover, Anderson has failed to demonstrate how calling character witnesses on his behalf would have changed the outcome of the trial and thus, that he was prejudiced by counsel's failure to call such witnesses. *Page 9 
 {¶ 24} Anderson also contends that trial counsel was ineffective for not filing a motion to suppress 1) his statement to the police that he had been on Vineyard Avenue and had offered a girl 50 cents; 2) his statement after his arrest that he had offered U.R. 50 cents to braid his hair; and 3) his subsequent statement to Detective Butler. Anderson's argument is without merit.
 {¶ 25} With respect to Anderson's first statement, it is well-established that a police officer may make a brief, warrantless investigatory stop of an individual where the officer reasonably suspects that the individual is or has been involved in criminal activity. Terry v. Ohio (1968), 392 U.S. 1, 20 L.Ed.2d 889,88 S.Ct. 1868. In assessing that conclusion, the officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion. State v.Andrews (1991), 57 Ohio St.3d 86, citing Terry, supra. Whether an investigatory stop is reasonable depends upon the totality of the circumstances surrounding the incident. State v. Williams (1990),51 Ohio St.3d 58, 60.
 {¶ 26} Here, Anderson matched the description of the suspect given to the police by Sanchez and U.R. only a short time earlier. Furthermore, he was standing on a street only two streets away from where the crime had occurred. Accordingly, the police reasonably suspected that Anderson had been involved in the crime and, *Page 10 
therefore, were entitled to stop him without a warrant.
 {¶ 27} Anderson was not in custody at this point, nor did the officers ask him any questions. Instead, when the officers approached him and told him that he matched the description of a suspect involved in a crime on Vineyard Avenue, Anderson asked the police what the crime involved. When they told him it was an attempted kidnaping, Anderson volunteered that he had been on Vineyard Avenue and had offered a girl 50 cents. The procedural safeguards identified in Miranda apply only when one is subjected to custodial interrogation. Miranda v.Arizona (1966), 384 U.S. 436, 478-479, 86 S.Ct. 1602, 16 L.Ed.2d 694. Because Anderson's statement was not made in the context of a custodial interrogation, it was admissible.
 {¶ 28} With respect to Anderson's second statement, contrary to his assertion that he was not advised of his Miranda rights until he arrived at the police station, Officer Dickens testified that upon arresting Anderson after U.R. identified him, the police immediately advised him of his Miranda rights, but did not ask him any questions. Anderson then volunteered his statement that he had offered U.R. 50 cents to braid his hair. Because the statement was not made in response to police questioning nor compelled by the police in any manner, it was properly admissible. See Miranda,384 U.S. at 478, 86 S.Ct. 1602, 16 L.Ed.2d 694 (any statement given freely and voluntarily without compelling influences is admissible). See, also,State v. Hoffner, 2004-Ohio-3430, at ¶ 29. *Page 11 
 {¶ 29} Likewise, Anderson's third statement was also admissible. Detective Butler testified that prior to taking the statement from Anderson, he verbally advised him of his Miranda rights and Anderson stated that he wished to make a statement. The statement (State's Exhibit 6) contains a paragraph explaining Anderson's Miranda rights and, directly below the paragraph, Anderson's initials indicating that he understood his rights and wished to make a written statement. Because Anderson was advised of his Miranda rights prior to making his statement, the statement was admissible.
 {¶ 30} As all of Anderson's statements were properly admissible, trial counsel did not err in not filing a futile motion to suppress the statements.
 {¶ 31} Anderson also contends that trial counsel was ineffective for not filing a motion to suppress the photo array. We disagree.
 {¶ 32} "Where, under the totality of the circumstances, a confrontation is unnecessarily suggestive and conducive to irreparable misidentification, a due process violation is articulated. No due process violation will be found, however, where an identification does not stem from an impermissibly suggestive confrontation but is, instead, the result of observations at the time of the crime."
 {¶ 33} State v. Salwan (May 30, 1996), Cuyahoga App. No. 68713. (Citations omitted.)
 {¶ 34} Here, Detective Butler testified that he chose photographs for the array *Page 12 
based on U.R.'s description of the suspect and her on-scene identification of Anderson and that all of the photos in the array were of males with similar physical features. Detective Butler testified further that he presented the array to U.R. the day after the crime and that he in no way suggested or directed U.R. to Anderson's photo, but she picked him out immediately. U.R. likewise testified that Detective Butler did not point out anyone in the photo array to her, but simply asked her to pick out the man who had approached her. She testified further that it took her only "a few seconds" to pick out Anderson. In light of this testimony, we find nothing to indicate that the photo array was unduly suggestive or unreliable. Thus, trial counsel was not ineffective for not filing a motion to suppress the photo array.
 {¶ 35} Finally, Anderson argues that counsel was ineffective for not entering a plea of not guilty by reason of insanity. He points to no reliable evidence to support this argument, however. Evidence that he was "unclean" and possibly living out of his car when he was arrested and evidence that he was waving his arms during his statement to Detective Butler is hardly sufficient to support this argument. To the contrary, the evidence indicated that Anderson tried to lie to cover up his crimes, thereby demonstrating that he knew and understood that his conduct was criminal.
 {¶ 36} Appellant's second assignment of error is overruled.
Affirmed.
 It is ordered that appellee recover from appellant costs herein taxed. *Page 13 
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
FRANK D. CELEBREZZE, JR., A.J., and PATRICIA A. BLACKMON, J., CONCUR
[1] Pursuant to court policy, minor victims of sex offenses are identified only by their initials. *Page 1